[Civ. No. 11110. Third Dist. July 21, 1966.]

CONTINENTAL CASUALTY COMPANY et al., Plaintiffs and Appellants, v. HARTFORD ACCIDENT & INDEMNITY COMPANY, Defendant and Respondent.

Rich, Fuidge, Dawson, Marsh, Tweedy & Morris and Thomas Marsh for Plaintiffs and Appellants.

Blade & Farmer and Robert V. Blade for Defendant and Respondent.

REGAN, J.—The question of law presented is whether the surety of a subcontractor is liable on its bond to the general contractor's surety (plaintiffs herein) for unpaid bills for construction materials used in a project built pursuant to the

federal Capehart Act where the subcontractor failed to pay for such materials.

A judgment of dismissal was entered following the sustaining of defendant's general demurrer without leave to amend. (1) plaintiffs Continental Casualty Company and Fidelity & Casualty Company of New York (herein "Continental")

A summary of the allegations disclosed by the single cause of action in plaintiffs' second amended complaint shows that were surety to a contract between the prime contractor, Hal B. Hayes & Associates, Inc. (herein "Hal Hayes"), and the United States, under a Capehart Act construction project at Beale Air Force Base; and (2) Continental's bonds were issued pursuant to the provisions of the Capehart Act and are statutory bonds. Hal Hayes assigned the entire contract to Hayes-Cal Builders, Inc. (herein "Hayes-Cal") and Hayes-Cal subcontracted certain plumbing work to Country Boys Builders Supply (herein "Country Boys"). Hartford Accident & Indemnity Company (herein "Hartford") was surety under the Country Boys' subcontract. Country Boys failed to pay and discharge debts for goods and materials furnished by its suppliers. Continental was obliged to and did pay and discharge this indebtedness in the sum of $130,158.52 pursuant to its obligation to the United States under its Capehart Act bond. The complaint alleges that Continental is subrogated as a matter of law to the rights of Hal Hayes and has succeeded to a cause of action against Hartford on its bond to Country Boys.

Hartford contends that Continental may not be subrogated to the rights of the prime contractor Hal Hayes on the subcontractor's bond because that bond was limited in scope to Hayes-Cal, the stated obligee.

Although the Hartford bond designated Hayes-Cal as obligee, it incorporated by reference the subcontract between Hayes-Cal and Country Boys, which subcontract expressly recognized the contractual arrangement between Hal Hayes and Hayes-Cal.

"WHEREAS, the said Principal [Country Boys] on the 24th day of July, 1958 entered into a written agreement with said Obligee for . . . a copy of which agreement is by reference made a part hereof." (Italics added.) A portion of that agreement, which is incorporated by reference in the Hartford bond, follows: "It is understood between the parties that Hayes Cal Builders, Inc. has entered into a contract with Hal

B. Hayes & Associates, Inc., and/or its nominee, on this portion of the work on the Beale Air Force Base Housing Project . . . . It is also understood between the parties that Hal B. Hayes & Associates, Inc. and the United States Air Force and other Governmental authorities and mortgagor corporations have entered into a contract for the total construction of the Beale Air Force Base Capehart Housing Project . . . and that this contract is the contract referred to in Section 2 of the Subcontract Agreement.'' The Hartford bond thus impliedly recognizes Hal Hayes as an obligee, as well as Hayes-Cal.

Continental was bound with its principal, Hal Hayes, by the terms of its bond to pay for all labor and materials furnished for the prosecution of the work provided for in the prime contract with the United States. This obligation included any claims of unpaid laborers and/or materialmen of all subcontractors utilized on the particular project, under the Capehart Act. (42 U.S.C.A. § 1594 et seq.)

The subcontract, which Hartford's bond incorporated by reference, included the following language:

■ ''Section 17. Subcontractor shall furnish the Contractor within ten days from the date hereof, at the expense of the Subcontractor, *material, labor and performance bonds* each on forms approved by the Contractor and in the full amount of this Subcontract.'' (Italics added.)

The amount of the subcontract was $528,000. The Hartford bond was issued in the amount of $528,000. Hartford's bond stated:

''Now THEREFORE, the condition of this obligation is such that if the Principal shall faithfully perform the work on his part to be performed, and shall fully indemnify and save harmless the Obligee from all claims and demands incurred by the Principal in the performance of said contract; and from all loss or damage which may arise to the Obligee by reason of any default on the part of the Principal, then this obligation shall be null and void; otherwise it shall remain in full force and effect.''

■ When a contractor's bond incorporates by reference the contract between the owner and the contractor, all provisions of the contract become provisions of the bond.

■ '' 'A bond which is given for the faithful performance of a contract, to which it refers, binds the surety for labor performed and materials furnished thereunder as completely as though the surety were a party to the contract. [Citations.]' ''

(*Culbertson* v. *Cizek*, 225 Cal.App.2d 451, 467 [37 Cal.Rptr. 548], quoting *Pacific States Elec. Co.* v. *United States Fidelity & Guar. Co.*, 109 Cal.App. 691, 693-694 [293 P. 812] ; see also *Verdugo Highlands, Inc.* v. *Security Ins. Co.*, 240 Cal.App.2d 527, 530-531 [49 Cal.Rptr. 736].) ▮▮▮ The Hartford bond consequently is held to inure to the direct benefit of unpaid materialmen. (*Pacific States Elec. Co.* v. *United States Fidelity & Guar. Co., supra,* at p. 694.)

The payment of the unpaid materialmen of Country Boys by Continental was not a voluntary act, but an act compelled by law. The Capehart Act required it to pay these claims. (42 U.S.C.A. § 1594 et seq.) Hartford, by the express terms of its bond, undertook to indemnify Hayes-Cal (and Hal Hayes inferentially) ''from all claims and demands incurred by the Principal in the performance of said contract.'' When Country Boys, the principal, defaulted on its subcontract, the breach caused a loss to Continental arising out of the necessity of paying for the materials already incorporated in the project which had not been paid for by Country Boys.

▮▮ This failure to pay on the part of Country Boys constituted a breach of the subcontract, and a bond which ''undertakes to guarantee the faithful performance of a subcontract to furnish all necessary labor and materials for a specified portion of a structure, implies a promise to pay for such labor and materials so furnished. It is unreasonable to hold the obligation is fulfilled by the mere supplying of the labor and materials. [Citations.]'' (*Pacific States Elec. Co.* v. *United States Fidelity & Guar. Co., supra,* at p. 694.)

Other jurisdictions have permitted a prime contractor's surety to recover against a subcontractor's surety under similar circumstances.

''We have, then, a contract which obligates the subcontractor to provide materials. The general contractor is obligated by law to pay such materialmen if the subcontractor fails to make payment. The surety of the subcontractor agrees to indemnify the general contractor for all losses suffered by reason of breach of the contract by the subcontractor. The subcontractor breaches his contract and fails to pay the materialmen. Thereupon, the general contractor pays such materialmen. There can be no doubt that it has suffered a loss by reason of the subcontractor's breach of the contract, which entitled it to indemnification by the surety of the subcontractor.'' (*Seaboard Surety Co.* v. *Standard Acc. Ins. Co.*, 277 N.Y. 429, 434-435

[14 N.E.2d 778, 781, 117 A.L.R. 658, 661].) The cited case reversed a judgment on the pleadings for the defendant surety company.

". . . It may be stated that if the subcontractor's bond is conditioned for the indemnification of the contractor for any claim or damage for which the principal contractor may be held liable and for the payment of which the subcontractor is primarily liable, liability exists on the part of the surety on the bond of the subcontractor to indemnify the principal contractor against any liability which may be imposed upon him, or to reimburse him for any payment he may be required to make, in respect of labor and materials furnished to the subcontractor. This conclusion is a fortiori true where payment for labor and materials furnished to the subcontractor is expressly made a condition of the bond of the subcontractor, or has that effect by reference in the bond to the provisions of the subcontract as to payment for materials and labor furnished to the subcontractor." (17 Am.Jur.2d, Contractors' Bonds, § 57, p. 235.) We think this interpretation is controlling in this case.

Defendant next contends plaintiffs' designation in its complaint of the Hartford bond as a performance bond is binding on plaintiffs and this court. We do not agree. The characterization of a bond by the parties is not binding on this court because the interpretation of a surety bond is a question of law. (Civ. Code, § 2837 (rules of interpretation of suretyship contracts same as other contracts); Civ. Code, § 1639 (interpretation of written contracts); *Saporta v. Barbagelata,* 220 Cal.App.2d 463, 472 [33 Cal.Rptr. 661].) An appellate court is not bound by the trial court's interpretation of a contract where there is no conflict in the evidence. (*Apra v. Aureguy,* 55 Cal.2d 827, 830 [13 Cal.Rptr. 177, 361 P.2d 897].)

Under some circumstances two persons may be cosureties for the same debt and may be required to share the loss, even when their liabilities originate in separate contracts. (4 Williston on Contracts (rev. ed.) §§ 1277A, 1278.) On the other hand, if one of them in equity should bear the ultimate burden rather than the other, they stand in the position of successive sureties. Whether they are cosureties or successive sureties depends upon the inferences to be drawn from their contracts and the circumstances of the case. (Id., § 1282, pp. 3656-3657.) If the first of two successive sureties is

forced to pay the debt, he is subrogated to the creditor's rights upon the bond and may enforce it against the second surety. (Id., § 1282, p. 3658.) As a general rule, if a subcontractor's bond is put up in order to indemnify the prime contractor for any claim for which the latter may be held liable and for the payment of which the subcontractor is primarily liable, the subcontractor's surety is required to indemnify the principal contractor (or the latter's surety) for any liability imposed upon him for labor and materials furnished to the subcontractor. (Cases cited in 117 A.L.R. 662-667; 17 Am.Jur.2d, Contractors' Bonds, § 57, p. 235; see also *Pacific States Elec. Co.* v. *United States Fidelity & Guar. Co., supra,* 109 Cal.App. at p. 694; *Glens Falls Indemnity Co.* v. *United States,* 229 F.2d 370, 375.) In this case, as we have indicated, Hartford's bond incorporated by reference the provision of the subcontract which required the subcontractor to furnish not only a performance bond but one indemnifying the prime contractor for material and labor claims. In issuing this bond Hartford became surety for Country Boys, and it was Country Boys' default which occasioned the present loss. Continental, on the other hand, had issued its bond to the prime contractor, and the loss was not occasioned by any default on the part of its principal. The two sureties must be regarded as successive sureties, and the loss in equity should fall upon Hartford, whose principal's default occasioned it.

The judgment sustaining the demurrer without leave to amend is reversed.

Pierce, P. J., and Friedman, J., concurred.

A petition for a rehearing was denied August 12, 1966, and respondent's petition for a hearing by the Supreme Court was denied September 14, 1966.