140 N.J. Super. 566 (1976)
357 A.2d 37
A & P SHEET METAL COMPANY, INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
EDWARD HANSEN, INC., A CORPORATION OF THE STATE OF NEW JERSEY; KEARNY POST OFFICE ASSOCIATES, A LIMITED PARTNERSHIP; THE TRAVELERS INDEMNITY COMPANY AND AETNA CASUALTY AND SURETY COMPANY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 15, 1976.
*568 Messrs. Lum, Biunno & Tompkins, attorneys for defendant Aetna Casualty & Surety Co. (Mr. Roger P. Sauer, appearing).
Messrs. Shanley & Fisher, attorneys for defendants Kearny Post Office Associates and the Travelers Indemnity Company (Mr. John J. Francis, Jr., appearing).
GAULKIN, J.S.C.
Plaintiff A & P Sheet Metal Company, Inc. (A & P) brought this action pursuant to the Mechanics Lien Law (N.J.S.A. 2A:44-64 et seq.) to recover certain sums claimed to be due on a subcontract it had with defendant Edward Hansen, Inc. (Hansen), the heating and plumbing contractor for defendant Kearny Post Office Associates (KPOA) in construction of the North Jersey Mail *569 Handling and General Maintenance Facility (the facility) in Kearny, New Jersey. By order dated July 21, 1975 partial summary judgment as to liability was granted against defendants Travelers Indemnity Company (Travelers) as surety for KPOA and defendant Aetna Casualty and Surety Company (Aetna) as surety for Edward Hansen, Inc. During the subsequent jury trial as to damages only, the two sureties settled the A & P claim for $115,000, leaving for resolution only the cross-claim of Travelers against Aetna which addresses the allocation of this liability as between the two sureties.
Aetna contends that an earlier denial of Travelers' motion for summary judgment on its cross-claim constituted a determination that Travelers and Aetna are cosureties, responsible to share equally in satisfying claimants under their bonds; that such determination constitutes the law of the case and may not now be reconsidered, and that if the substantive issue is to be reached, the same conclusion of cosuretyship should be made. Travelers contends that no law of the case has been determined and that it should be found to be a subsurety, responsible only to the extent that the Aetna bond is insufficient to satisfy claimants.

I. Findings of Fact

On June 19, 1968 KPOA entered into a contract with the United States Post Office Department under which it agreed to build the facility and lease it to the post office. Pursuant to that agreement, Travelers issued its labor and material payment bond in the amount of $2,500,000. That bond, dated June 24, 1968, describes KPOA as principal, Travelers as surety, and the United States of America and the New York Bank for Savings, the mortgagee, as coobligees.[1] The condition of the obligation is stated as follows: *570 * * * that if the principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material which prior to occupancy by the Government as used or reasonably required for use in the performance of the Agreement, then this obligation shall be void * * *.
The bond defined a claimant as being one "having a direct contract with the principal, with a general contractor of the principal, or with a subcontractor in privity with either the principal or a general contractor"; it was earlier determined that A & P, as a subcontractor in privity with Hansen, was a proper claimant under the Travelers bond.
Thereafter, on April 14, 1969 KPOA entered into a contract under which Hansen was to act as the heating, ventilation, airconditioning and plumbing contractor at a contract price of $2,900,000. Paragraph 8.6 of that agreement provided that
* * * prior to the commencement of any of the work to be performed under this Contract, Contractor will obtain and submit to Owner a 100% Performance Bond and a 100% Labor and Material Payment Bond executed by Contractor as Principal, and as Surety by a corporate insurance company ... naming as obligees therein the Owner and the New York Bank for Savings each in a penal sum equal to the Contract Sum ... Owner shall pay the premiums for such surety bonds ... Such bonds shall be on forms reasonably acceptable to Owner, and will cover the faithful performance by Contractor of this Agreement and the payment of all obligations arising under this Agreement.
A similar provision was included by KPOA in each agreement which it had with other contractors on the job.
Hansen started to work without complying with the surety bond requirement, and for some months submitted and received *571 periodic payments on requisitions accompanied by "waiver of lien affidavits," the purpose of which was to assure KPOA that all Hansen creditors were being currently paid. This procedure, however, caused delays in payment of monthly requisitions, and Hansen therefore caused Aetna to issue, at the cost of KPOA, the labor and material and performance bonds required by the contract; those bonds, dated March 11, 1971, and each of $2,900,000, described Hansen as principal and Contractor, Aetna as surety, and KPOA and the New York Bank for Savings as obligees. The condition of the obligation of the labor and material bond, involved here, is stated to be that
* * * if Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void.
A & P fell within the bond definition of claimant and thus had recourse against Aetna as well as Travelers. Neither the Travelers bond nor the Aetna bonds contain provisions concerning other bonds or security, or subrogation, or any other matters bearing on the present issues.
Hansen did not complete the job, but left or was dismissed from the job on or about September 1, 1971 and later was adjudicated bankrupt. The $115,000 settlement was agreed to by both Travelers and Aetna in satisfaction of the claims of A & P for work done for and unpaid by Hansen when Hansen left the job.

II. Law of the Case

On June 13, 1975 Travelers moved for summary judgment "determining the rights as between the sureties, Aetna and Travelers, with respect to the [A & P] claims"; it then took the same position it urges here, that it should be considered a subsurety rather than a cosurety of Aetna. That motion, heard by a judge no longer sitting in this court, was denied; *572 in his oral opinion he found no issue as to any material fact, but based his denial on his conclusion that the two bonds are "general bonds" and "that there is cosuretyship as to these two companies."
Two orders memorialize that determination. The first, submitted by counsel for A & P and entered June 24, 1975, provides as follows:
* * * that the motion granting partial summary judgment on behalf of the defendant, The Travelers Indemnity Company, pursuant to Rule 4:46, be and the same is hereby denied.
Counsel for Aetna apparently objected to that form of order, but did not so advise the judge (R. 4:42-1 (b)) until after it had been signed and returned to A & P counsel for filing. At the judge's request A & P counsel withheld filing its order until Aetna counsel submitted its alternative form of order. Aetna did so on July 15, 1975, and that order was also signed, under date of July 21, 1975:
ORDERED that the Motion of defendant, Travelers Indemnity Company for Summary Judgment declaring that its bond is secondary to the bond of Aetna Casualty & Surety Company be and is hereby denied on the ground that both of the bonds of the defendant, Travelers Indemnity Company and defendant Aetna Casualty & Surety Company are general bonds and that there is a cosuretyship as to the defendants Travelers Indemnity Company and Aetna Casualty & Surety Company.
It does not appear whether any objections were made to this form of order. Curiously neither of the orders was ever filed.
The threshold question, then, is whether the "law of the case" doctrine limits or forecloses consideration of these issues now. The utilization of that doctrine at the trial level was recently described in State v. Hale, 127 N.J. Super. 407 (App. Div. 1974):
The use of the doctrine in this situation avoids repetitious litigation of the same issue during the course of a single trial. With respect to this aspect of "law of the case" it has been generally *573 stated that "the `law of the case' concept is merely a non-binding decisional guide addressed to the good sense of the court in the form of a `cautionary admonition' against relitigation `when the occasion demands it.'" Ross Products, Inc. v. N.Y. Merchandise Co., 242 F. Supp. 878, 879 (S.D.N.Y. 1965). The distinction between the doctrine of "law of the case" and res judicata is readily apparent: "one directs discretion: the other supersedes it and compels judgment. In other words, in one it is a question of power, in the other of submission." Southern Ry. Co. v. Clift, 260 U.S. 316, 319, 43 S.Ct. 126, 127, 67 L.Ed. 283 (1922). "Law of the case" therefore operates as a discretionary rule of practice and not one of law. Id. 127 N.J. Super. at 411.
Application of these principles is illustrated in State v. Bell, 89 N.J. Super. 437 (App. Div. 1965); State v. Fioravanti, 78 N.J. Super. 253 (App. Div. 1963) aff'd. in part and vacated in part 46 N.J. 109 (1965); Commercial Trust Co. v. Kohl, 140 N.J. Eq. 294 (Ch. 1947), all finding law of the case to be established; and State v. Hale, supra, and State v. Roccasecca, 130 N.J. Super. 585 (L. Div. 1974), finding law of the case not to be established.
None of the New Jersey cases, however, consider law of the case as applied to the denial of summary judgment. The very nature of such an order makes peculiarly difficult any conclusion that it governs subsequent stages of the proceeding:
The determination of a motion for summary judgment on the pleadings is an adjudication as to whether an issue requiring trial has been created. It serves to expeditiously and justly dispose of those matters in which there is no genuine factual issue. Denial of a motion for summary judgment is a determination that there is an undisposed of issue, not a disposition of the issue itself. [Seire v. Police and Fire Pension Comm'n, 4 N.J. Super. 230, 235 (App. Div. 1949) aff'd. 6 N.J. 586 (1951)]
Consistent with this analysis, case law of other jurisdictions generally holds that the denial of summary judgment preserves rather than resolves issues and therefore does not preclude later reconsideration of matters implicated in the motion. See, e.g., Dessar v. Bank of America Nat'l Trust and Sav. Ass'n, 353 F. 2d 468 (9 Cir.1965); Dictograph *574 Products Co. v. Sonotone Corp., 230 F.2d 131 (2 Cir.1956) reh. den. 231 F.2d 867 (1956), cert. den. 352 U.S. 883, 77 S.Ct. 104, 1 L.Ed.2d 82 (1956); GAF Corp. v. Circle Floor, 329 F. Supp. 823 (S.D.N.Y. 1971) aff'd 463 F.2d 752 (2 Cir.1972) cert. den. 413 U.S. 901, 93 S.Ct. 3058, 37 L.Ed.2d 1045 (1973); Glover v. Spinks, 12 N.C. App. 380, 183 S.E. 2d 262 (Ct. App. 1971); Cohen v. New York Herald Tribune, Inc., 63 Misc.2d 87, 310 N.Y.S.2d 709 (Sup. Ct. 1970); Snelwar v. Snelwar, 27 Misc.2d 933, 212 N.Y.S.2d 882 (Sup. Ct. 1961); Aufiero v. New York Life Ins. Co., 74 N.Y.S.2d 275 (Sup. Ct. 1947).
The logic of such holdings is unavoidable, and Aetna appears to acknowledge that a simple denial of summary judgment would not bar consideration of the same question at a subsequent stage. It urges, however, that the oral opinion of the trial judge and the order last entered by him make clear his legal finding of cosuretyship and that that underlying reason for the denial of summary judgment should be deemed the law of the case. In support of its proposition Aetna cites Stella v. Graham-Paige Motors Corp., 132 F. Supp. 100 (S.D.N.Y. 1955), rem. 232 F.2d 299 (2 Cir.), cert. den. 352 U.S. 831, 77 S.Ct. 46, 1 L.Ed. 2d 52 (1956); and Bryant v. Rushing, 121 Ga. App. 430, 174 S.E.2d 226 (Ct. App. 1970), both of which suggest in dicta that a specific ruling of law made in conjunction with the denial of summary judgment may constitute the law of the case. That suggestion may have merit in some circumstances, but not here.
Clearly, neither the orders entered nor the oral opinion on which they are based constituted any disposition of the legal issue of cosuretyship or subsuretyship. Legal effect is generally accorded to the terms of an order, rather than to the reasons given for its entry. See, e.g., Suburban Dept. Stores v. East Orange, 47 N.J. Super. 472, 479 (App. Div. 1957); MacFadden v. MacFadden, 49 N.J. Super. 356, *575 359 (App. Div.) certif. den. 27 N.J. 155 (1958); Credit Bureau Collection Agency v. Lind, 71 N.J. Super. 326, 328 (App. Div. 1961); Glaser v. Downes, 126 N.J. Super. 10, 16 (App. Div. 1973) certif. den. 64 N.J. 513 (1974). Here the orders direct nothing more than the denial of summary judgment; the further language in the July 25 order merely capsulizes the reasoning of the trial judge. No judgment at this time can be said "to reopen what has been decided" (Messinger v. Anderson, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1911)), for until an order is entered affirmatively declaring cosuretyship or subsuretyship the trial court has not adjudicated the issue at all. Cf. Homeowners' etc., Inc. v. So. Plainfield Sewerage Auth., 60 N.J. Super. 321 (App. Div. 1960); In re Beam, 93 N.J. Eq. 593 (Prerog. 1922).
Nor would it be appropriate to broadly read the orders as having such an affirmative intent or effect. As suggested by Seire v. Police and Fire Pension Comm'n, supra, the distinction between denial of summary judgment to one party and the grant of summary judgment to the adversary is one of substance and not mere form or semantics. The trial judge there denied summary judgment to plaintiffs upon finding, contrary to their contention, that they were members of the State Pension System, and he thereupon entered summary judgment for defendants. The Appellate Division reversed, holding that
* * * notice of the cross-motion [i.e., for summary judgment] must be given to the adverse party before the court can entertain it * * * In the absence of such formal application of a cross-motion by the defendants, and appropriate notice thereof, the court here was limited to granting or denying the motion of the plaintiffs. [4 N.J. Super. at 236]
Here Aetna made no cross-motion for summary judgment. Since it would have been inappropriate for the trial judge to have entered summary judgment for Aetna, it necessarily *576 follows that the orders of denial may not be read to include that final relief sought by Aetna.
Although the dispute presented here was thus not resolved by the trial judge, it is true that he did express unequivocally his view of its merits. His conclusion is entitled to full consideration, not only as a matter of courtesy and respect but so that inappropriate relitigation of the same issue may be avoided. Cf. Dictograph Products Co. v. Sonotone Corp., supra. However, the extent to which deference should be paid to those earlier expressed views is, as already noted, a matter left to the discretion of the court. State v. Hale and State v. Rocasecca, supra. As stated in Rodriguez v. Olaf Petersen's Rederi, 387 F. Supp. 754 (E.D.N.Y. 1974),
* * * "the law of the case" rule is not so inflexible as to permit of no exception. Certainly it should not prevent the discharge of a judge's obligation to present an appellate court with the judgment he believes ought to be rendered in the case. [at 757]
Cf. In re Allied Electric Products, Inc., 194 F. Supp. 26 (D.N.J. 1961).
I conclude, in light of these considerations, that neither the denial of summary judgment nor the conclusions of the trial judge in support thereof should bar full consideration of the meritorious issue as to the relative liabilities of Aetna and Travelers.

III. The Relative Liabilities of Aetna and Travelers

The Aetna contention of cosuretyship is based upon principles summarized generally at 11 Appleman, Insurance Law and Practice, § 6771 at 664-665 (1944):
The test of cosuretyship, entitling cosureties to contribution, is a common liability to the same party or parties for the same debt, which may arise out of the same writing or transaction, or out of different writings or transactions, and at different times. Broken down into its component parts, as regards contribution, the test has been held to involve a common liability upon the same obligation, *577 and where several bonds are given for the same purpose, a surety on one bond who is compelled to pay the entire amount may proceed against his cosureties on all the bonds for contribution. (footnotes omitted).
See also, United States Fid. & Guar. Co. v. Naylor, 237 F. 314 (8 Cir.1916).
Travelers does not dispute that general rule, but urges its own subsuretyship on the basis of elaborations set forth in Restatement, Security, § 146, at 405 (1941):
Where there are two or more sureties for the same duty of the principal

* * * * * * * *
(b) The sureties are cosureties in the absence of agreement or stipulation of either to the contrary or of duties or equities imposing the principal liability on one of them.
Section 147 describes typical instances where such "duties or equities" indicate subsuretyship, specifying as one such instance:
(3) Where there are two principals with different sureties, and there is a default of one principal for which liability is also imposed on the other, the surety for the latter is a subsurety.
The comments to these sections are useful; Restatement, Security, § 146, Comment (b) at 406, 408 states:
Where two persons are bound to a common duty and there is nothing in an agreement, stipulation, or the nature of the transaction from which to determine their mutual liability, the equitable conclusion is that they share the burden. * * * Applying this principle to the relation of two or more sureties, they are assumed to be co-sureties unless there is some positive reason for making one a principal and the other a subsurety. Aside from agreement and stipulation, the relations of the several sureties to the transaction may be such as to require that one surety be a principal surety and another a subsurety. One surety may have such a business interest in the transaction that he will be the principal surety to another surety.

* * * * * * * *
The equities of the sureties are not equal and their relation is subsuretyship rather than cosuretyship where one surety has undertaken *578 a general obligation against defaults of the principal while the other surety has undertaken an obligation in respect of specific defaults, and the specific default occurs. * * * In such a case, the surety against the specific default is the principal surety and the general surety the subsurety.
Restatement, Security, § 147, Comment (3) at 416, 417 states:
If either of two persons may be compelled to pay for what is actually the fault of one of them, the loss as between themselves should fall upon the one at fault. If each is a principal and the sureties are different the relation between the sureties is controlled by the relation between the principals. Hence the surety for the defaulting principal is the principal surety and the surety for the other principal is subsurety.
Illustrations:
7. P secures a timber permit and executes a bond to the State with S as surety to guarantee the faithful performance of his duties to the State under the permit. Before any timber is cut, P assigns the Permit to P[1] who executes a bond to the State with S[1] as surety. Under an applicable statute the first bond remains in force. P[1] cuts timber for which he fails to pay. While S and S[1] are both liable to the State, S[1] is principal surety and S is subsurety.

* * * * * * * *
9. S, surety on a sheriff's bond, has been compelled to pay money by reason of the default of the deputy sheriff. S may recover in full from S[1], surety on the deputy's bond.
Apparently no reported New Jersey cases discuss rights and obligations of two or more sureties for the same obligation, although a substantial body of New Jersey law has developed with respect to some analogous problems as between insurers. See, e.g., Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 28 N.J. 554 (1959); London, etc., Ins. Co. v. Allstate, Inc., 72 N.J. Super. 369 (Ch. Div. 1962); American Sur. Co. of N.Y. v. American Indem. Co., 8 N.J. Super. 343 (Ch. Div. 1950); Liberty Motor & Inc. v. United States Guar. Co., 133 N.J.L. 35 (E & A 1945). Those cases, however, involve multiple insurers of a common *579 insured and their holdings turn largely on the language of the policies involved; they are neither controlling nor useful here.
Rights and obligations among sureties have been considered by a number of courts outside of New Jersey. One group of cases involves two or more sureties of the same principal; their results turn on whether the bonds were for the same purpose, related to the same obligation, covered the same subject matter, guaranteed against the same acts, imposed the same liability, and the like. See, e.g., Schoenfeld v. Neher, 428 F.2d 152 (10 Cir.1970), aff'd and rem. on other grounds, 453 F.2d 896 (10 Cir.1972); United States v. Horvath Brothers, Inc., 278 F. Supp. 159 (E.D. Wis. 1967); Hartford Acc. & Indem. Co. v. Anderson, 192 Minn. 200, 256 N.W. 185 (Sup. Ct. 1934); Indemnity Ins. Co. v. American Sur. Co., 239 App. Div. 522, 268 N.Y.S. 203 (App. Div. 1933); Schinnel v. Doyle, 6 Wash. App. 830, 496 P.2d 566 (Ct. App. 1972). Although their holdings vary, these cases represent applications of the general rule stated in Appleman, supra, refined in Restatement, Security, § 146, supra at 405, that "the sureties are cosureties in the absence of agreement or stipulation * * * or of duties or of equities imposing the principal liability on one of them."
Exploration of these difficult and uncertain tests of relative "duties or equities" between sureties of a common principal (cf. Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., supra 28 N.J. at 559-560) is not necessary, because here the bonds in question were written for two different principals. In this situation, case law generally holds, consistent with Restatement, Security, § 147, supra, that where the default of one principal imposes liability on the other, the surety of the defaulting principal should bear the primary responsibility. That rule has been applied in a number of cases, essentially parallel to this, to impose primary liability on the surety of a subcontractor where both the general contractor and the subcontractor are liable for claims *580 of a labor or material supplier to the subcontractor. See, e.g., American Cas. Co. v. Brezina Const. Co., 295 F.2d 603 (8 Cir.1961); Glens Falls Indem. Co. v. United States, 229 F.2d 370 (9 Cir.1955); United States v. United States Fid. & Guar. Co., 113 F.2d 888 (2 Cir.1940); Triangle Elec. Supply Co. v. Mojave Electric Co., 234 F. Supp. 293 (W.D. Mo. 1964); Continental Cas. Co. v. Hartford Acc. & Indem. Co., 243 Cal. App.2d 565, 52 Cal. Rptr. 533 (D. Ct. App. 1966); cf. St. Paul Mercury Indem. Co. v. Wright Contracting Co., 250 F.2d 758 (4 Cir.1958). The principle has been recognized in a variety of other factual settings as well. See, e.g., Southern Sur. Co. v. Tessum, 178 Minn. 495, 228 N.W. 326 (Sup. Ct. 1929) (coguardians); United States Fid. & Guar. Co. v. Commercial Cas. Ins. Co., 222 Wis. 151, 268 N.W. 111 (Sup. Ct. 1936) (bank and state treasurer); Maryland Cas. Co. v. Gough, 146 Ohio St. 305, 65 N.E.2d 858 (Sup. Ct. 1946) (coreceivers). Cf. Annotation. "Right to contribution or indemnity of executor, administrator, guardian, trustee, or sureties against a co-fiduciary or sureties, in respect of losses or defaults for which the fiduciaries are answerable." 66 A.L.R. 1147 (1930).
The result in the contractor-subcontractor cases derives not merely from the equity of imposing liability on the party causing the loss, but from the very nature and purpose of the bond which the general contractor has required from the subcontractor. As stated in Socony-Vacuum Oil Co. v. Continental Cas. Co., 219 F.2d 645 (2 Cir.1955).
Doubtless the prime contractor in requiring a bond of its subcontractor sought protection against his own liability to materialmen of the subcontractor. But this he obtained through a bond requiring the payment of the materialmen. Obviously it was contemplated that performance under the bond would benefit not only the prime contractor who would thereby be exonerated from liability to the materialmen thus paid but also the materialmen of the subcontractor who were thereby to be paid. [at 648]
Other cases have similarly noted the protection which is thus afforded to a general contractor through bonding of his *581 subcontractor. See, e.g., MacEvoy Co. v. United States, 322 U.S. 102, 110, 64 S.Ct. 890, 88 L.Ed. 1163 (1944); United States v. Greene Elec. Serv. of Long Island, Inc., 252 F. Supp. 324 (E.D.N.Y. 1966), aff'd 379 F.2d 207 (2 Cir.1967); Frommeyer v. L. & R. Constr. Co., 139 F. Supp. 579 (D.N.J. 1956) aff'd 261 F.2d 879 (3d Cir.1958); McGrath v. American Sur. Co., 307 N.Y. 552, 122 N.E.2d 906 (Ct. App. 1954); cf. Annotation. "Liability of surety on subcontractor's bond to principal contractor for public improvement or its surety, in respect for claims for labor or materials furnished to subcontractor," 117 A.L.R. 662 (1938).
All of these holdings are entirely consonant with New Jersey case law which has long recognized that as between two parties individually liable for the whole amount of a loss, "the loss may be thrown upon the party on whom * * * the responsibility ought in equity to fall." McCartin v. Traphagen, 43 N.J. Eq. 323, 335 (Ch. 1887), aff'd sub nom. McCartin v. McCartin, 45 N.J. Eq. 265 (E. & A. 1889). See also, Kanzler v. Smith, 142 N.J. Eq. 609 (Ch. 1948); John A. Cozzone & Co. v. Earl Radio Corp., 114 N.J. Eq. 436 (Ch. 1933); Purchase v. Atlantic Safe Dep. & Trust Co., 81 N.J. Eq. 344 (Ch. 1913), aff'd 83 N.J. Eq. 353 (E. & A. 1914). The authorities are clearly applicable and compelling. Travelers issued its bond on behalf of KPOA to protect the Government and the mortgagee. To assure that protection, persons contracting with KPOA contractors were given recourse to the Travelers bond for losses arising from defaults of KPOA contractors; and to protect itself and its surety against such losses resulting from defaults of its own contractors KPOA required its contractors to provide bonds, at its own expense. The $115,000 claim of A & P arose from the default of Hansen, but A & P had recourse against KPOA and Travelers as well as Hansen and Aetna. Reason and equity require that the primary source of satisfaction should be Aetna, whose principal *582 caused the loss[2] and whose bond was written in order to protect KPOA from just such a loss.
Judgment will therefore be entered on the Travelers cross-claim declaring that Aetna is the primary surety under its labor and material bond, and Travelers a subsurety, with respect to satisfaction of the A & P judgment.
NOTES
[1] The parties dispute whether the bond was required of KPOA by reason of the Miller Act, 40 U.S.C.A. § 270a et seq., which requires the contractor to post surety bonds on any contract for the construction of "public buildings of the United States" (see United States v. Harrison & Grimshaw Constr. Co., 305 F.2d 363 (10 Cir.), cert. den. 371 U.S. 920, 83 S.Ct. 287, 9 L.Ed.2d 229 (1962); Continental Cas. Co. v. Allsop Lumber Co., 336 F.2d 445, 451 (8 Cir.1964), cert. den. 379 U.S. 968, 85 S.Ct. 662, 13 L.Ed.2d 561 (1965); 41 C.F.R. § 1-10.104-2(b)); the Travelers bond does conform, however, to Miller Act requirements.
[2] Hansen has instituted a federal court action against KPOA and Travelers alleging breach of contract and conspiracy to defraud. Although Hansen might there establish that its failure to satisfy the A & P claim was precipitated by wrongful acts of KPOA, that issue is not involved in this proceeding and does not bear upon the conclusion that the judgment here arose from Hansen's failure to satisfy its obligations to A & P.