MAR 1 8 1987

For The Northern Mariana Islands
By _____
(Deputy Clerk)

UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

APPELLATE DIVISION

KOREA INSURANCE CORP.,               )
                                     )
          Plaintiff-Appellee,        )      DCA 85-9013
                                     )
     vs.                             )
                                     )
IGNACIA VILLALUZ, ET AL.,            )      OPINION
                                     )
          Defendants-Appellants.     )
_____)

BEFORE:  DUENAS, LAURETA, and REAL,[*] District Judges

DUENAS, District Judge

For Plaintiff-Appellee              For Defendants-Appellants

RONALD H. PETICA, Esq.              DOUGLAS F. CUSHNIE, Esq.
Klemm, Blair, Sterling             Post Office Box 949
  & Johnson                         Saipan, CM  96950
1008 Pacific News Bldg.
238 O'Hara Street
Agana, Guam  96910

_____

[*]The Honorable Manuel L. Real, Chief Judge, United States District Court, Central District of California, sitting by designation.

This action was initiated on July 27, 1984, with the filing of a complaint for indemnity by Plaintiff-Appellee Korea Insurance Corporation (hereinafter referred to as Plaintiff-Appellee or "KIC") against Defendants-Appellants Ignacia Villaluz and Pacific Enterprises, Inc., seeking recovery under a written indemnity agreement for amounts allegedly lost by KIC as a surety on a construction performance bond. Defendants-Appellants filed an answer on August 23, 1984, denying any liability.

A court trial was held on June 10, 1985, and the court entered its findings of facts and conclusions of law on June 14, 1985. The court entered judgment on July 12, 1985, in favor of KIC in the amount of $9,675.50 plus costs of suit against Defendants-Appellants. On August 8, 1985, the trial court entered an order awarding attorney's fees to KIC in the amount of $2,900 and taxing costs in favor of KIC in the amount of $185.50. Defendants-Appellants filed a timely notice of appeal.

STATEMENT OF FACTS

Plaintiff KIC is a corporation licensed to do business in the Commonwealth of the Northern Mariana Islands (NMI). Pacific Enterprises, Inc., is a corporation primarily engaged in the construction and hardware business in the Commonwealth of NMI, and Ignacia Villaluz, a part owner of Pacific Enterprises, Inc., is a resident of the Commonwealth.

1018

On or about October 19, 1981, Marianas Pacific Construction Company (hereinafter referred to as "Marianas") and Frieda and Ignacio Demapan (hereinafter referred to as "Demapans") entered into a construction contract for the construction of a concrete store and laundromat in Dandan, Saipan. In connection with said construction contract, KIC issued a performance bond No. KIC-1665-PF on behalf of Marianas (contractor) as principal and in favor of the Saipan Economic Development Loan Fund (hereinafter referred to as "EDLF") as obligee.

In connection with and in consideration for the issuance of said performance bond, Defendants-Appellants executed on March 4, 1982, an indemnity agreement on behalf of Marianas (contractor) and in favor of EDLF. Paragraph 4 of the indemnity agreement provided in pertinent part as follows:

> That the undersigned will indemnify the Company, and keep it indemnified for, and hold and save it harmless from, any and all damages, payments, advances, losses, costs, stamps, taxes, penalties, charge, attorney's fees, and expenses for (sic) whatever kind of (sic) nature that the Company may at any time sustain or incur as a consequence of having become surety upon the aforementioned Bond, its renewals, extensions, modifications or substitutions, and without limiting the generality of the foregoing, to pay, to reimburse, and make good to the Company, its successors and assigns, all sums of money which it shall pay or cause to be paid by virtue of said Bond, its renewals, extensions, modifications or substitutions. In no case shall the indemnity for attorney's fees be less than 15% of the amount claimed by the Company, regardless of whether the Company's claim is satisfied through court action or settled out of court.

Construction on the project proceeded through August 16, 1982, at which time the sixth and seventh increment billing was

submitted to the Demapans for their approval. The Demapans, their inspector, and the manager of Marianas signed off on the billing thereby releasing funds for the final two payments under the contract less ten percent (10%) retention ($8,000). EDLF issued its check for $14,400 and held the $8,000 retention of contract balances.

In or about March, 1983, the Demapans declared Marianas in default under the construction contract and notified KIC to complete the project pursuant to the terms and conditions of the performance bond. The trial court found that Marianas was in default under the construction contract with the Demapans.

As a result of the default, KIC retained the services of the law firm Klemm, Blair & Barusch, A Professional Corporation, to resolve the disputes arising out of the default, and to defend KIC in Civil Action No. 84-05 in the Commonwealth Trial Court which was filed by the Demapans against KIC seeking damages allegedly arising out of the default. Attorney's fees in the total amount of $3,242 were incurred by KIC.

In connection with the evaluation of the declaration of default, KIC, through its attorneys, retained the independent architectural firm of Taniguchi-Ruth AIA Associates, Inc., to evaluate the construction project and to advise KIC as to

whether, in that firm's professional opinion, Marianas, the contractor, was in default and if so, to provide KIC with an estimate of the probable cost of completion of the project. On May 27, 1983, the Taniguchi-Ruth firm rendered their report advising KIC that in their professional opinion, the contractor was in default and that the estimated probable cost of completing construction was $6,384. The amount of architect's fees incurred by KIC was $511.

On July 15, 1983, KIC notified Defendants-Appellants in writing, that a demand had been made on KIC to complete the construction project in strict conformity with the plans and specifications pursuant to the terms of the performance bond. Defendants-Appellants were also advised that the remaining contract balances ($8,000) might not be sufficient to complete the construction project and that they would be held responsible for all losses incurred by KIC.

At the time of the default, EDLF held an $8,000 retention of contract balances. On September 16, 1983, EDLF as obligee under the performance bond, KIC 1665-PF, executed and delivered its written assignment of rights whereby all of the EDLF rights in said bond were transferred to the Demapans.

Pursuant to advice of counsel, KIC then assisted the Demapans in locating a new contractor to complete the project. In December, 1983, the Demapans executed a completion contract with Ma-Ko Corporation for the amount of $6,000 and this amount was paid to Ma-Ko out of the $8,000 retention held by EDLF.

KIC settled the Demapans' $14,000 delay damage claim which had been asserted in Civil Action No. 84-05, by virtue of a $7,000 settlement payment. KIC paid $5,000 and the $2,000 balance was paid out of the retention held by EDLF. The trial court found that the above settlement was made by KIC in good faith.

On April 9, 1984, counsel for KIC made a written demand for repayment by its indemnitors, the Defendants-Appellants, for all losses suffered. The Defendants-Appellants made no payment to KIC and this litigation was instituted.

The following issues are presented on appeal:

1. Whether the indemnity agreement is enforceable against Defendants?

2. Whether it was reversible error to admit Plaintiff's Exhibit Nos. 8, 9, 10, 11 and 12 into evidence?

3. Whether the trial court erred in awarding attorney's fees for prosecution under the indemnity agreement?

### ANALYSIS

I. The Indemnity Agreement Is Enforceable Against Defendants-Appellants.

The Defendants-Appellants first argue that they are not bound by the indemnification agreement because an assignment of the performance bond (KIC 1665-PF) was made by EDLF to the Demapans on September 11, 1983. Defendants-Appellants contend that this alleged assignment invalidates their indemnity agreement because Section 23 of the indemnity agreement states

1022

that it may not be changed or modified orally nor shall any change be effective unless specifically agreed in writing.

Contrary to Defendants-Appellants' argument, Sections 11 and E of the indemnity agreement deal specifically with the rights of KIC under the performance bond.

Section 11 states in pertinent part as follows:

> The undersigned (Defendants-Appellants) hereby authorize the Company (KIC) at is (sic) sole discretion to do the following: (a) from time to time to make or consent to any change in, or issue any substitue (sic) for or renewal of, any such bond, ... (c) to take such steps as the Company may deem necessary or proper to obtain release from liability from any such bond.

Subsection E states as follows:

> The undersigned hereby empower and authorize the corporation to grant or consent to the granting of, any and all extensions, continuations, increases, modifications, changes, alterations and/or renewals of the original bond herein referred to, and to execute or consent to the execution of any and all substitutions for said bond with the same or different conditions and parties, and the undersigned hereby hold themselves jointly and severally liable to the Company for the original bond herein above-mentioned or for any and all extensions, continuations, increases, mofifications (sic), changes, alterations, renewals or substitutions thereof, until the full amount including principal, interests, premium costs, and other expenses due to the Company thereunder is fully paid up. The undersigned hereby also waive notice of such extensions, renewals, alterations, and substitutions.

Clearly, Sections 11 and E authorize the aforementioned assignment of the performance bond and, therefore, Defendants-Appellants remain bound by the indemnification agreement.

Defendants-Appellants' next contention is that the final acceptance of the contract, as evidenced by the final installment payments made under the contract, served to discharge KIC as surety and the Defendants-Appellants as indemnitors. As a general principle of law this would be true, but in this particular case there was an $8,000 retention fund consisting of 10 percent of each increment payment and held by EDLF as security for completion pursuant to Paragraph B of Article IV of the construction contract. Paragraph B provides as follows:

> In order to insure the proper performance of this contract, the Owners or EDLF shall retain ten percent (10%) of the total amount on each estimate for a period of thirty (30) calendar days after completion of the store and laundry mat unit.

Thus, KIC and Defendants-Appellants remain as surety and indemnitors, respectively.

The Defendants-Appellants next challenge the trial court's factual finding "[t]hat at all times herein KIC proceeded and acted in good faith...." [Finding of Fact #13, June 14, 1985). The Defendants-Appellants cite National Surety Corporation v. Peoples Milling Co., Inc., 57 F.Supp. 281 (D.C. Kentucky, 1944), and argue that KIC should not have made payment on a claim that could have been successfully defended. They further contend that since KIC paid said invalid claim, the Defendants-Appellants, as indemnitors, are relieved from their liability under the indemnity agreement.

KIC, however, correctly argues that National Surety Corporation, Id., stands for the proposition that where the surety and indemnitee has the power pursuant to its contract of indemnity to settle claims, "it is only necessary that such an adjustment or settlement be a reasonable one and made in good faith." Id. at 283. Paragraphs 3 and 10 of the Indemnity Agreement support this position. Paragraph 3 provides that Defendants-Appellants would indemnify KIC against "any and all liability, loss, costs, damages, fees of attorneys and other expenses which the company may sustain or incur by reason of, or in consequence of the execution of such bonds. . ." [Bond No. KIC-1665-PF/PM].

Paragraph 10 provides:

> The Company shall have the exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against the Company or the undersigned or any one of them on any such bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and the Company's decision thereon, if made in good faith, shall be final and binding upon the undersigned unless the undersigned, or any of them, shall request the Company to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Company, at the time of such request, cash or collateral satisfactory to the Company in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses, and attorneys' fees, including those of the Company. An itemized statement of payments made by the Company for any of the purposes specified herein, sworn to by an officer of the Company, or the voucher or vouchers for such payments, shall be prima facie evidence of the liability of the

undersigned to reimburse the Company for such payments with interest.

The trial court's finding of fact that it proceeded and acted in good faith in handling the Demapans claim is supported by substantial evidence adduced at trial. Specifically, KIC retained attorneys and architects to determine its proper responsibilities pursuant to the terms of the performance bond. KIC decided to enter into a completion contract upon the advice of its attorneys which was based on the architect's professional determination that the project had not been completed in accordance with the plans and specifications. Suit had been instituted by the Demapans against XIC in connection with the Demapans' delay damage claim. The construction project was completed approximately 19 months late and the contract called for liquidated damages in the amount of $25 per day which totaled in excess of $14,000. KIC finally settled such delay claim for $7,000 after an offer of $5,450 was rejected by the Demapans.

Additionally, KIC was bound to pay the delay damages because the contractor's performance bond incorporated by reference the construction contract between the Demapans and Marianas and thus, all provisions of the construction contract became provisions of the bond. Continental Casualty Co. v. Hartford Accident & Indemnity Co., 243 Cal. App. 2d 565, 52 Cal. Rptr 533 (1966).

In a case involving the almost identical issues, indemnity agreement provisions and presentation of evidence by the surety, the court reasoned as follows:

> The surety was authorized to incur expense for investigating and defending the claims asserted against it and to employ accountants, attorneys and investigators to perform this service.
>
> The surety had the right to settle and compromise the claims which were asserted against it but in so doing it was required to act in good faith. The uncontroverted evidence in this case demonstrated that the surety did act in good faith.
>
> Provisions in indemnity agreements granting to the indemnitor the right to compromise and settle claims, and providing that vouchers and other evidence of payment shall be _prima facie_ evidence of the propriety thereof, have been upheld as not against public policy and enforced by the courts.
>
>           \* \* \*
>
> The purpose of clauses in indemnity agreements of the type here involved is to facilitate the handling of settlements by sureties and obviate unnecessary and costly litigation.
>
> _Transamerica Insurance Co. v. Bloomfield_, 401 F.2d 357, 362-363 (6th Cir., 1968).

The record below overwhelmingly supports that KIC acted in good faith in settling the claim on the bond with the Demapans.

II. __It Was Not Reversible Error To Admit Plaintiff's Exhibits 8, 9, 10, 11 and 12 Into Evidence.__

The Defendants-Appellants next raise the issue that Exhibit Nos. 8, 9, 10, 11 and 12 should never have been admitted in

1027

evidence. These exhibits constitute various unexecuted documents which Mr. Demapan testified were submitted to various parties to be executed in connection with the closing out of the project. Defendants-Appellants objected to the introduction of such documents at trial because no foundation had been laid and because they were unauthenticated in that they were not signed and, thus, had no probative value. However, the primary defense of Defendants-Appellants is that the construction project had been completed, accepted and final payment had been made, which allegedly served to exonerate the bond. Therefore, Exhibits 8, 9, 10, 11 and 12, along with Mr. Demapan's testimony, were probative as to the issue of whether the contract had actually been completed to the satisfaction of the parties. Mr. Demapan testified that he was asked to execute these documents by Marianas, the contractor, and refused to do so. These exhibits just support the overwhelming evidence before the court, that the construction project had not been completed.

Even if it was error to admit these exhibits, it was certainly not reversible error because, as stated above, the evidence that the project had not been completed pursuant to the terms and specifications of the construction contract was overwhelming.

///
///
///

## III. The Trial Court's Award of Attorney's Fees Incurred by KIC in Enforcing the Indemnity Agreement Was Proper.

The trial court found in its Findings of Fact and Conclusions of Law filed June 14, 1985, that Defendants-Appellants, as indemnitors, were responsible pursuant to their indemnity agreement, for attorney's fees in the amount of $3,242 incurred by KIC in "resolving the disputes arising out of the default and for the purpose of defending Civil Action No. 84-05 in the Commonwealth Trial Court which was filed by the Demapans against KIC seeking damages allegedly arising out of the default." (Finding of Fact #10). The Defendants-Appellants do not dispute this amount. The Defendants-Appellants, however, dispute the trial court's order entered August 8, 1985, awarding attorney's fees and costs in the amount of $3,085.50 allegedly incurred by KIC in seeking to enforce the terms of the indemnity agreement against them. The Defendants-Appellants contend that Paragraph 4 of the indemnity agreement is not broad enough to include within its ambit these attorney's fees charged against Defendants-Appellants. Paragraph 4 of the indemnity agreement expressly provides as follows:

> That the undersigned will indemnify the Company, and keep it indemnified for, and hold and save it harmless from, any and all damages, payments, advances, losses, costs, stamps, taxes, penalties charge, attorney's fees, and expenses for (sic) whatever kind of (sic) nature that the Company may at any time sustain or incur as a consequence of having become surety upon the abovementioned Bond,

1029

its renewals, extensions, modifications or substitutions, and without limiting the generality of the foregoing, to pay, reimburse, and make good to the Company, its successors and assigns, all sums of money which it shall pay or cause to be paid by virtue of said Bond, its renewals, extensions, modifications or substitutions. In no case shall the indemnity for attorney's fees be less than 15% of the amount claimed by the Company, regardless of whether the Company's claim is satisfied through court action or settled out of court.

As can be seen by the clear language of Paragraph 4 of the Indemnity Agreement, KIC is entitled to complete reimbursement for all expenses incurred at any time as a consequence of having issued the performance bond. Thus, the trial court's award to KIC of attorney's fees and costs incurred pursuing this indemnification claim against Defendants-Appellants is affirmed.

## CONCLUSION

The trial court's judgment is affirmed in all respects.

_____
CRISTOBAL C. DUENAS, District Judge