702 A.2d 535

GROVER PLUMMER, JR., PLAINTIFF–RESPONDENT, v. DEPART-
MENT OF CORRECTIONS, STATE OF NEW JERSEY; COR-
RECTIONS OFFICERS JOHN WADLEY,[1] TERRENCE BELLA-
MY, PHILIP STEINBERG AND SERGEANTS FRANK PINHO
AND VICTOR CHASEY, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Submitted October 27, 1997—Decided November 25, 1997.

---

[1] Incorrectly designated as John Watley in the complaint.

Before Judges HAVEY, LANDAU and NEWMAN.

*Peter Verniero*, Attorney General of New Jersey, attorney for appellants (*Mary C. Jacobson*, Assistant Attorney General, of counsel; *Lynn Wassel*, Deputy Attorney General, on the brief).

*Forman, Cardonsky, Andril, Ungvary & Eiges*, attorneys for respondent (*Robert A. Ungvary*, on the brief).

The opinion of the court was delivered by

**HAVEY, P.J.A.D.**

Plaintiff instituted the present action under 42 *U.S.C.A.* § 1983 (§ 1983) against defendants State of New Jersey, Department of Corrections (DOC) and five corrections officers.[2] By leave granted, the defendant officers appeal from the denial of their summary judgment motion. They argue that: (1) the motion judge erred when concluding that the defense of qualified immunity was a question of fact for the jury; and (2) summary judgment should have been granted because their actions were objectively reasonable, thereby entitling them to qualified immunity as a matter of law. We reverse and dismiss the complaint against all defendants.

The following facts were presented by defendants in support of their motion. At approximately 7:30 a.m., while patrolling the East Jersey State Prison, Corrections Officer John Wadley observed plaintiff dressed in "state grays"[3] and state boots in the prison parking lot, asking employees for money. Wadley recognized plaintiff as a former inmate who had been housed at Rahway Camp during his confinement. Inmates housed in Rahway Camp have access to the exterior grounds of the prison. They therefore have the "opportunity to become familiar with the grounds and with the procedures in effect at Rahway Camp." Knowing that plaintiff was no longer an inmate, Wadley ordered him to leave the premises.

Later that day Wadley received a call from the prison centerkeeper[4] reporting that there was a person in the bushes near

---

[2] Summary judgment granted in favor of the State of New Jersey and the DOC is not challenged.

[3] "State grays" refers to the clothing inmates wear when incarcerated at the prison.

[4] The centerkeeper is the senior officer on duty.

prison property. A second call from a prison officer reported that the trespasser was across the street from the prison behind the Superintendent's house. In both instances Wadley was unable to locate any trespasser. Later, he received a third call reporting that the trespasser was again near the Superintendent's house. Wadley observed plaintiff running from a shed behind the house. He called for backup and pursued plaintiff to a nearby Dairy Queen.

Sergeant Chasey, hearing that a "possible inmate" or trespasser was running from the Superintendent's house, was told by a senior officer to pursue the unidentified person, detain him and take him to the Internal Affairs Unit (IAU) for questioning. Sergeant Pinho received a transmission from his lieutenant requesting that Pinho backup Chasey. In response, Pinho and Officer Steinberg joined in the pursuit. Officer Bellamy, who also heard the transmission about an inmate in "grays", joined the pursuit in a prison van.

Officers Chasey, Pinho, Wadley, Bellamy and Steinberg stopped plaintiff and questioned him. Plaintiff was frisked and handcuffed because he was angry and was making hostile remarks. He was thereupon transported to the IAU.

In his certification in opposition to summary judgment, plaintiff states that although he was in the vicinity of the prison on the morning in question, he never entered prison property. At the time, he was walking from his home to a nearby warehouse to make inquiry respecting job prospects. He was wearing blue jeans, a gray shirt and sneakers. He obtained an employment application from the warehouse and returned home. Upon returning to the warehouse later that day, plaintiff observed Officer Wadley driving his perimeter patrol. Plaintiff then walked to the Dairy Queen to get something to eat. There, he was arrested and handcuffed by defendants.

In light of the competing certifications, the motion judge denied defendants' summary judgment application in its entirety. Without deciding the validity of defendants' qualified immunity de-

fense, the judge concluded that because there were factual disputes, all issues, including qualified immunity, must be decided by a jury.

In order to establish a viable claim under § 1983, a plaintiff must show that a public official acting under color of law violated a right guaranteed by federal law, constitutional or statutory. *Gomez v. Toledo,* 446 *U.S.* 635, 640, 100 *S.Ct.* 1920, 1923, 64 *L.Ed.*2d 572, 577 (1980); *McKinney v. East Orange Mun. Corp.,* 284 *N.J.Super.* 639, 647, 666 *A.*2d 191 (App.Div.1995), *certif. denied,* 143 *N.J.* 519, 673 *A.*2d 277 (1996). Here, defendants were obviously acting under color of state law in seizing plaintiff and transporting him to IAU for questioning.

■ Qualified or "good faith" immunity is an affirmative defense to a § 1983 claim alleging a violation of a federal constitutional right by a public official. *Harlow v. Fitzgerald,* 457 *U.S.* 800, 815, 102 *S.Ct.* 2727, 2736, 73 *L.Ed.*2d 396, 408 (1982); *Gomez, supra,* 446 *U.S.* at 640, 100 *S.Ct.* at 1924, 64 *L.Ed.*2d at 577–78. The immunity, available only to officials performing discretionary functions, *see Harlow, supra,* 457 *U.S.* at 816, 102 *S.Ct.* at 2737, 73 *L.Ed.*2d at 409, protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 *U.S.* 335, 341, 106 *S.Ct.* 1092, 1096, 89 *L.Ed.*2d 271, 278 (1986).

■ Law enforcement officials are generally "shielded from liability [under § 1983] insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow, supra,* 457 *U.S.* at 818, 102 *S.Ct.* at 2738, 73 *L.Ed.*2d at 410. "[B]are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." *Id.* at 817–18, 102 *S.Ct.* at 2738, 73 *L.Ed.*2d at 410. A "clearly established right" is one where "[t]he contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 *U.S.* 635, 640, 107 *S.Ct.* 3034, 3039, 97 *L.Ed.*2d 523, 530–31 (1987).

■ The New Jersey Supreme Court has adopted the federal objective reasonableness standard when determining the applicability of the qualified immunity defense in § 1983 actions. *See Kirk v. City of Newark*, 109 *N.J.* 173, 536 *A.*2d 229 (1988). Interpreting *Anderson*, the *Kirk* Court reasoned that § 1983 requires "disposition of the actions as a matter of law, at least when these actions arise out of an alleged unlawful arrest, search, or seizure by a law enforcement officer." *Id.* at 179, 536 *A.*2d 229. Thus, an officer is entitled to summary judgment if "either ... he or she acted with probable cause, or, even if probable cause did not exist, that a reasonable police officer could have believed in its existence." *Id.* at 184, 536 *A.*2d 229. Courts should look to the information possessed by the law enforcement officials at the time of the warrantless arrest. *Ibid.; Anderson, supra,* 483 *U.S.* at 641, 107 *S.Ct.* at 3040, 97 *L.Ed.*2d at 532.

Here, the standards pertaining to probable cause to carry out a warrantless arrest were clearly established at the time plaintiff was apprehended. *Kirk, supra,* 109 *N.J.* at 186, 536 *A.*2d 229; *Henry v. United States,* 361 *U.S.* 98, 100–02, 80 *S.Ct.* 168, 170–71, 4 *L.Ed.*2d 134, 136–38 (1959). "[T]he contours of the right were sufficiently clear that a reasonable official would understand whether [he or] she was violating that right." *Kirk, supra,* 109 *N.J.* at 186, 536 *A.*2d 229.

However, the fact that the law at issue is clearly established will not deprive these defendants from the qualified immunity defense if, in light of the specific facts known to them, they could reasonably believe that probable cause to apprehend plaintiff existed. *Id.* at 186, 536 *A.*2d 229. Stated differently, an officer will be immune from civil liability under § 1983 for a wrongful arrest "if there were sufficient objective indicia of probable cause to justify the action taken even if, in fact, probable cause did not exist." *McKinney, supra,* 284 *N.J.Super.* at 647–48, 666 *A.*2d 191; *Malley, supra,* 475 *U.S.* at 344–45, 106 *S.Ct.* at 1097–98, 89 *L.Ed.*2d at 280–81; *Kirk, supra,* 109 *N.J.* at 184, 536 *A.*2d 229. The inquiry, therefore, becomes an objective, albeit fact specific, question to be

decided as a matter of law. *Anderson, supra,* 483 *U.S.* at 641, 107 *S.Ct.* at 3040, 97 *L.Ed.*2d at 532.

■ Here, the motion judge erroneously concluded that the qualified immunity issue could not be decided on defendants' summary judgment motion. Courts have consistently emphasized the need for qualified immunity questions to be resolved on motions for summary judgment. *McKinney, supra,* 284 *N.J.Super.* at 648, 666 *A.*2d 191; *Howlett v. Rose,* 496 *U.S.* 356, 375–78, 110 *S.Ct.* 2430, 2442–43, 110 *L.Ed.*2d 332, 353–54 (1990)); *Anderson, supra,* 483 *U.S.* at 646 n. 6, 107 *S.Ct.* at 3042 n. 6, 97 *L.Ed.*2d at 535 n. 6. The issue of "objective reasonableness" ordinarily should be decided by summary judgment, "governed by federal substantive law." *McKinney, supra,* 284 *N.J.Super.* at 648, 666 *A.*2d 191. Qualified immunity is not merely a defense to liability, but an immunity from suit. *Mitchell v. Forsyth,* 472 *U.S.* 511, 526, 105 *S.Ct.* 2806, 2815, 86 *L.Ed.*2d 411, 425 (1985). If not decided at the earliest possible stage of a litigation, the underlying purposes for the defense are frustrated because public officials are obliged to face the burdens of trial. *Harlow, supra,* 457 *U.S.* at 816, 102 *S.Ct.* at 2737, 73 *L.Ed.*2d at 409. "[E]ven such pretrial matters as discovery are to be avoided if possible, as '[i]nquiries of this kind can be peculiarly disruptive of effective government.' " *Mitchell, supra,* 472 *U.S.* at 526, 105 *S.Ct.* at 2815, 86 *L.Ed.*2d at 425 (quoting *Harlow, supra,* 457 *U.S.* at 817, 102 *S.Ct.* at 2737, 73 *L.Ed.*2d at 410)).

■ Based on the existing record, defendants are entitled to enforcement of their qualified immunity as a matter of law. The affidavits and answers to interrogatories demonstrate that defendants Chasey, Pinho, Steinberg and Bellamy were all responding to a call for backup respecting an investigation of a "possible inmate" leaving prison grounds and running towards the local Dairy Queen. Responding to the call, the officers observed plaintiff, whom they recognized as a former inmate, wearing gray clothes walking near the Dairy Queen. Moreover, analogous to *Kirk, supra,* 109 *N.J.* at 187, 536 *A.*2d 229, defendants were

instructed by prison supervisors to detain the individual and take him to IAU for questioning, supporting the reasonable conclusion that probable cause existed to take such action.

Significant to the probable cause inquiry is the fact that information provided by the prison centerkeeper and Officer Wadley was corroborated by the officers' personal observations; plaintiff was recognized as a former inmate who was likely familiar with the prison's day to day operations; and in light of the privilege given to inmates allowing them to work on external grounds of the prison, these defendants were especially attentive to unauthorized persons in the area so as to prevent the smuggling of drugs and weapons into the prison facility. *See Beck v. Ohio*, 379 *U.S.* 89, 96–97, 85 *S.Ct.* 223, 228, 13 *L.Ed.*2d 142, 148 (1964).

In light of these undisputed facts, there were "sufficient objective indicia of probable cause to justify the action taken. . . ." *McKinney, supra,* 284 *N.J.Super.* at 647, 666 *A.*2d 191. This is true even though defendants failed to confirm plaintiff's story that he was in the area because of a job interview. *See Kirk, supra,* 109 *N.J.* at 187, 536 *A.*2d 229. Consequently, the conduct of defendants Chasey, Pinho, Steinberg and Bellamy was objectively reasonable, thereby preserving their qualified immunity.

The question whether Officer Wadley's qualified immunity provides a defense to plaintiff's § 1983 claim is a closer question. However, applying the standard enunciated in *Brill v. Guardian Life Ins. Co. of America,* 142 *N.J.* 520, 536, 666 *A.*2d 146 (1995), we are satisfied that summary judgment should have been granted in his favor as well. Even if we accept plaintiff's statement that he was not on prison property the day he was apprehended, we are convinced that, in light of the specific facts known to Officer Wadley, a reasonably well-trained officer would believe that plaintiff had breached the perimeter security of the prison, thereby justifying his apprehension for questioning. Wadley knew that plaintiff was an ex-inmate and was familiar with the prison exterior grounds. He observed plaintiff on the day in question while

Wadley was on perimeter duty.[5]  It is undisputed that later the same day Wadley received three calls from prison officials directing that he investigate a possible intruder near the prison superintendent's home.  According to Wadley, after the third call he observed plaintiff running towards the Dairy Queen where he was apprehended by the officers.  Wadley immediately called for backup.  Plaintiff does not dispute the fact that he saw Wadley that day and that plaintiff was apprehended at the Dairy Queen by defendants.

Moreover, as noted, Chasey, Steinberg and Pinho state without contradiction that they received radio calls about a "possible inmate," or a person "in grays" on or near the prison property.  According to Steinberg and Chasey, when apprehended plaintiff was wearing gray clothing.  Plaintiff acknowledged that he was wearing a gray shirt when stopped by the officers.

The unchallenged statements by Chasey, Steinberg and Pinho fortify Wadley's statement that he believed plaintiff was wearing prison "grays" when observed by Wadley on or near prison property.  When he received calls about an "intruder," and thereafter saw plaintiff proceeding toward the Dairy Queen, Wadley had reason to suspect that plaintiff may have been attempting to breach the perimeter security of the prison for the purpose of contacting inmates for unlawful purposes.  Consequently, his qualified immunity provides a defense as a matter of law.

Reversed and remanded for the entry of an order for summary judgment in defendants' favor.

---

[5] The "perimeter patrol officer" is responsible for defense against prison breaks and preventing unauthorized persons from having contact with inmates.