706 A.2d 256

HENRY M. HART, PLAINTIFF–APPELLANT, v. CITY OF JERSEY CITY, JERSEY CITY POLICE DEPARTMENT, ROBERT J. SABO, ARTHUR PEASE, THOMAS LEIGH, ROBERT TAINO, JOHN KEENE AND A. DAUNARUMMO, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 10, 1997—Decided February 25, 1998.

---

[6] In view of our reversal, we do not address Correa's contention that the State was required to give him use immunity.

488

Before Judges MUIR, Jr., KESTIN and STEINBERG.

*Susan B. Fellman,* argued the cause for appellant (*Breuninger & Fellman,* attorneys; *Laura M. Le Winn,* on the brief).

*Daniel W. Sexton,* Assistant Corporation Counsel, argued the cause for respondent (*Sean M. Connelly,* Jersey City Corporation Counsel, attorney; *Mr. Sexton,* on the brief).

The opinion of the court was delivered by

KESTIN, J.A.D.

Plaintiff's complaint alleged various causes of action in tort (the State law claims) and a cause of action under 42 U.S.C. § 1983 (the § 1983 claim), all arising from certain actions of his superior

officers in the Jersey City Police Department. The motion judge dismissed the State law claims on defendants' motion for summary judgment, ruling

I don't see any State claims in this case. There's no malice. There's no intentional infliction. There's no outrageous conduct. The statement made in the in-house publication is a privileged statement and it's also true and I say that he is a public official. So all of those claims are out. There's no claim under the Tort Claims Act that has been stated here.

He declined, however, to dismiss the § 1983 claim on the basis that it was "too fact-sensitive to be dismissed."

The matter was then assigned for trial. After an *"in limine"* hearing pursuant to *N.J.R.E.* 104(a) on the question of qualified immunity, the trial judge dismissed the § 1983 claim.

Plaintiff appeals from both orders of dismissal. We affirm.

Plaintiff was a police officer of long standing in the Jersey City Police Department, a sergeant assigned to the Emergency Services Bureau. In 1992, apparently connected with the deterioration of his marriage, plaintiff began exhibiting allegedly bizarre behavior, which came to the attention of his superiors in February of that year when his wife filed a domestic violence complaint against him. On August 13, 1992, a warrant was issued for plaintiff's arrest for violating a restraining order. He had slashed the four tires of a car parked in the driveway of the family home, and attempted to cut the telephone and cable TV wires. Plaintiff was on vacation at the time.

On August 26, after he returned to work, plaintiff was ordered by his superiors to engage in treatment with a psychologist, or face suspension. Plaintiff refused. He was suspended and required to turn in his shield, uniform and gun. The following day, the suspension was changed to administrative leave, and plaintiff was ordered to undergo a fitness-for-duty examination. Because of the threat of further suspension if he did not comply, plaintiff submitted, under protest, to the examination, which included drug testing and a psychological evaluation. Based on the results of this testing, plaintiff was subsequently returned to duty without restrictions, with a recommendation that he undergo outpatient

alcohol counseling. Plaintiff's suit was predicated on claims of injury from the allegedly unlawful order of August 26 that he undergo treatment, and from the publication of facts bearing upon his one-day suspension.

The State law claims involved counts alleging intentional infliction of emotional distress; defamation; and two privacy torts, intrusion upon plaintiff's seclusion and placing him in a false light. Our review of the record in the light of the written and oral arguments of the parties discloses that the motion judge was correct to dismiss the State law claims on summary judgment.

■ No *prima facie* showing was made that defendants intended to cause plaintiff distress or that they deliberately disregarded the risk that severe emotional distress would occur; nor was there any conduct rising to the level of outrageousness on defendants' part. Thus, plaintiff failed to establish the existence of two essential elements of the tort of intentional infliction of emotional distress. *See Buckley v. Trenton Saving Fund Society,* 111 *N.J.* 355, 366, 544 *A*.2d 857 (1988); *Restatement (Second) of Torts,* § 46 comment d, at 72–73 (1977).

■ The defamation and invasion of privacy claims were based upon publication of the fact of plaintiff's one-day suspension in an in-house police department bulletin, and other allegations of related facts. The bulletin item, seen by plaintiff's fellow officers, and their awareness of some of the background facts, allegedly made plaintiff an object of ridicule and caused him humiliation. However, if a statement is true, it is not actionable as defamation. *Kotlikoff v. The Community News,* 89 *N.J.* 62, 69 n. 2, 444 *A*.2d 1086 (1982); *Restatement (Second) of Torts* § 558 at 155, § 581A, comment c, at 236 (1977). Moreover, as a police officer, plaintiff is a public official. *Costello v. Ocean County Observer,* 136 *N.J.* 594, 613, 643 *A*.2d 1012 (1994). Thus to survive summary judgment, he must prove actual malice: that the statement objected to was published with knowledge of its falsity, or with reckless disregard as to whether it was false or not. *Id.* at 614, 643 *A*.2d 1012 (citing *New York Times Co. v. Sullivan,* 376 *U.S.* 254, 279–80, 84 *S.Ct.*

710, 726, 11 *L.Ed.*2d 686, 706 (1964), and its progeny). Plaintiff made no *prima facie* showing to satisfy that standard, either.

■ Similarly, the tort of false light requires that the contested publicity be untrue. *Restatement (Second) of Torts,* § 652E, comment a, at 394–95 (1977). *See also Cibenko v. Worth Publishers, Inc.,* 510 *F.Supp.* 761, 766 (D.N.J.1981). The notice of plaintiff's suspension, which was limited to the bare fact of its occurrence and the date, was certainly true.

■ In order for plaintiff to have had a viable cause of action for intrusion upon his seclusion by reason of publication of the notice of suspension and the privacy-invasive treatment ordered, the acts complained of needed to be established as unreasonably and offensively intrusive to the average person, *Lingar v. Live–In Companions, Inc.,* 300 *N.J.Super.* 22, 35, 692 *A.*2d 61 (App.Div. 1997), with due consideration for the principle that police officers, because they occupy positions of public trust and exercise special powers, have a diminished expectation of privacy. *Rawlings v. Police Dep't of Jersey City,* 133 *N.J.* 182, 189, 627 *A.*2d 602 (1993). Plaintiff's showings in this regard were inadequate also.

■ Finally in respect of the State law claims, the municipality's primary liability under the Tort Claims Act for the acts of the individual defendants was required to be on a *respondeat superior* theory. *N.J.S.A.* 59:2–2; *Tice v. Cramer,* 133 *N.J.* 347, 355, 627 *A.*2d 1090 (1993). Consequently, since the individual named officers were not liable, neither was the City of Jersey City or its police department. *Ibid.*

■ As to the § 1983 claim, we agree with plaintiff that the issue of qualified immunity was not a fit subject for a ruling pursuant to *N.J.R.E.* 104(a). That rule of evidence addresses issues of testimonial privilege only, Biunno, *New Jersey Rules of Evidence, R.* 104, comment 3, at 126–28 (1997); *see also, e.g., In re Environmental Ins. Actions,* 259 *N.J.Super.* 308, 319–20, 612 *A.*2d 1338 (App.Div.1992) (attorney-client privilege); *State v. Postorino,*

253 *N.J.Super.* 98, 108–09, 601 *A.*2d 223 (App.Div.1991) (informant); *State v. Phillips,* 213 *N.J.Super.* 534, 543, 517 *A.*2d 1204 (App.Div.1986) (physician-patient), and not questions of substantive immunity. *See* Biunno, *supra,* comment 2, at 126 ("Rule 104 hearings should be distinguished from the host of other hearings held before trial or otherwise outside of the presence of a jury. These would include all hearings necessary to determine matters of law within the exclusive province of the court."). Nevertheless, on any one or more of several bases, we affirm the trial judge's dismissal of the § 1983 claim.

We begin with our substantial agreement with the substantive analysis in the trial judge's comprehensive bench opinion. It correctly articulates the law governing the question of qualified immunity in a § 1983 action, and embodies a valid application of those legal principles to the facts at hand.

■ The modern qualified immunity standard, introduced by *Harlow v. Fitzgerald,* 457 *U.S.* 800, 102 *S.Ct.* 2727, 73 *L.Ed.*2d 396 (1982), and adopted by the New Jersey Supreme Court in *Kirk v. City of Newark,* 109 *N.J.* 173, 536 *A.*2d 229 (1988), applies to government officials whose "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald, supra,* 457 *U.S.* at 818, 102 *S.Ct.* at 2738, 73 *L.Ed.*2d at 410. Where transgression of a constitutional right is alleged, a determination of whether the right is clearly established ought not to involve broad, abstract reasoning, but, rather, should be based upon "particularized" considerations: "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Anderson v. Creighton,* 483 *U.S.* 635, 640, 107 *S.Ct.* 3034, 3039, 97 *L.Ed.*2d 523, 531 (1987).

■ The trial judge was correct to conclude that plaintiff had made no *prima facie* showing that a clearly established right was impinged. In the context of plaintiff's claim of injury from the allegedly unlawful order of August 26, 1992 that he undergo treatment, we are mindful of the general Fourteenth Amendment

liberty interest in medical self-determination, including the right to refuse unwanted medical care. *Cruzan v. Director, Missouri Dep't of Health,* 497 *U.S.* 261, 277, 278, 110 *S.Ct.* 2841, 2851, 111 *L.Ed.*2d 224, 241 (1990); *In re Quinlan,* 70 *N.J.* 10, 40, 355 *A.*2d 647 (1976), *cert. denied sub nom. Garger v. New Jersey,* 429 *U.S.* 922, 97 *S.Ct.* 319, 50 *L.Ed.*2d 289 (1976) (the right to privacy established in *Griswold v. Connecticut,* 381 *U.S.* 479, 85 *S.Ct.* 1678, 14 *L.Ed.*2d 510 (1965), is broad enough to encompass patient's decision to refuse treatment in certain cases). Nevertheless, the right to refuse medical treatment is not absolute. *In re Conroy,* 98 *N.J.* 321, 348, 486 *A.*2d 1209 (1985). The patient's rights have often been weighed against the interests of others. *See id.* at 353, 486 *A.*2d 1209 (citing cases where patients' rights gave way to the interest of third parties). *See also Skinner v. Railway Labor Executives' Ass'n,* 489 *U.S.* 602, 627, 109 *S.Ct.* 1402, 1418, 103 *L.Ed.*2d 639, 666 (1989) (diminished expectation of privacy with regard to an order for drug testing of railway workers after accidents).

As the trial judge duly noted in his thoughtful bench opinion, the entire factual context surrounding the order requiring plaintiff to submit to treatment or face suspension must be considered. Plaintiff was a police officer with authoritative sway and access to arms. It was a matter of public record that he had been exhibiting alarming behavior. Further, an order had been entered in his domestic violence matter which limited his use of firearms. In the circumstances, it was reasonable to view the order requiring plaintiff to engage in treatment as lawful, irrespective of the truthfulness *vel non* of allegations about his drinking or his sartorial practices on the job, which were contested by plaintiff's counsel.

It is clear also that the issue of qualified immunity was a fit subject for disposition in the pre-trial phase of the suit. Usually, such a determination is to be made on a motion for summary judgment, if appropriate, *Mitchell v. Forsyth,* 472 *U.S.* 511, 526, 105 *S.Ct.* 2806, 2815, 86 *L.Ed.*2d 411, 425 (1985); *Kirk v.*

*City of Newark,* 109 *N.J.* 173, 184, 536 *A.*2d 229 (1988); *Plummer v. Department of Corrections,* 305 *N.J.Super.* 365, 372, 702 *A.*2d 535 (App.Div.1997) ("Courts have consistently emphasized the need for qualified immunity questions to be resolved on motions for summary judgment"); *Casamasino v. City of Jersey City,* 304 *N.J.Super.* 226, 238 n. 5, 699 *A.*2d 697 (App.Div.1997); *cf. Brill v. Guardian Life Ins. Co.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995), but there is nothing talismanic about the summary judgment procedure, *i.e.,* there is no reason why it ought to be seen as the exclusive means for pre-trial resolution of the issue, as plaintiff contends. The point of the cases that address the question is that, where the factual context of the case permits, it is preferable to dispose of the qualified immunity emanations of a case in advance of trial. *Hunter v. Bryant,* 502 *U.S.* 224, 228, 112 *S.Ct.* 534, 537, 116 *L.Ed.*2d 589, 596 (1991); *Mitchell v. Forsyth, supra,* 472 *U.S.* at 526, 105 *S.Ct.* at 2815, 86 *L.Ed.*2d at 425; *Harlow v. Fitzgerald,* 457 *U.S.* 800, 818–19, 102 *S.Ct.* 2727, 2738, 73 *L.Ed.*2d 396, 409–11 (1982); *Russell v. Coyle,* 266 *N.J.Super.* 651, 658, 630 *A.*2d 396 (1993), *certif. denied,* 135 *N.J.* 302, 639 *A.*2d 302 (1994). The reasons for this are fairness and procedural economy, *Melton v. City of Oklahoma City,* 879 *F.*2d 706, 730 n. 38 (10th Cir.1989) (entitlement not to stand trial effectively lost if case erroneously goes to trial) (quoting *Mitchell v. Forsyth, supra,* 472 *U.S.* at 526, 105 *S.Ct.* at 2815, 86 *L.Ed.*2d at 425); *cf. Brill v. Guardian Life Ins. Co., supra,* 142 *N.J.* at 540–42, 666 *A.*2d 146, avoiding disruption to government, *Russell v. Hardin,* 879 *F.*2d 417, 421 (8th Cir.1989) (quoting *Harlow v. Fitzgerald, supra,* 457 *U.S.* at 817–18, 102 *S.Ct.* at 2738, 73 *L.Ed.*2d at 409–10), and sparing the private parties the unnecessary costs and other demands posed by long, drawn out law suits, as well as conserving the public fisc, *Russell v. Hardin, supra,* 879 *F.*2d at 419; *cf. Behrens v. Pelletier,* 516 *U.S.* 299, 306–10, 116 *S.Ct.* 834, 839–40, 133 *L.Ed.*2d 773, 783 (1996); *Pittman v. Nelms,* 87 *F.*3d 116, 119 (4th Cir.1996); *Plummer v. Department of Corrections, supra,* 305 *N.J.Super.* at 372, 702 *A.*2d 535. It is, in short, important from everyone's

perspective that defendants' entitlement to the benefit of a qualified immunity be determined earlier rather than later.

The motion judge saw that issue as requiring the kind of fact development that could only occur in a trial. The trial judge viewed the matter differently and decided, as a matter of law, that, viewing the factual allegations and potential proofs most indulgently for the benefit of plaintiff, he could not prevail. Whether measured by the traditional formulation governing summary judgment considerations, *see Brill v. Guardian Life Ins. Co., supra,* 142 *N.J.* at 540, 666 *A.*2d 146; *Judson v. Peoples Bank & Trust Co.,* 17 *N.J.* 67, 74–75, 110 *A.*2d 24 (1954); *Kopin v. Orange Products,* 297 *N.J.Super.* 353, 365, 688 *A.*2d 130 (App.Div.), *certif. denied,* 149 *N.J.* 409, 694 *A.*2d 194 (1997), or similar standards, such as those applying to rulings on motions for involuntary dismissal at the end of plaintiff's case, *see Dolson v. Anastasia,* 55 *N.J.* 2, 5–6, 258 *A.*2d 706 (1969); *Ritondo v. Pekala,* 275 *N.J.Super.* 109, 115–16, 645 *A.*2d 802 (App.Div.), *certif. denied,* 139 *N.J.* 186, 652 *A.*2d 174 (1994), plaintiff's allegations were assumed to be true, and the matter was dismissed on qualified immunity grounds only after the totality of his allegations were found wanting in the circumstances as a matter of law. As we have indicated, we are in substantial agreement with the trial judge in this regard. Although the timing of the trial judge's decision was unusual, the decisional standard used was, in the circumstances, appropriate; and the result reached was correct.

We do not view the requirements of the law of the case doctrine, *Lanzet v. Greenberg,* 126 *N.J.* 168, 192, 594 *A.*2d 1309 (1991); *State v. Hale,* 127 *N.J.Super.* 407, 410–11, 317 *A.*2d 731 (App.Div.1974), to have precluded the result the trial judge reached or the way in which he reached it. To the extent the law of the case concept tends to bar a second judge on the same level, in the absence of additional developments or proofs, from differing with an earlier ruling, we see it as ameliorated in several respects. First, the prevailing standard calls for flexible, "good-sense" application of the doctrine. *See State v. Reldan,* 100 *N.J.* 187, 205, 495

*A.*2d 76 (1985); *State v. Hale, supra,* 127 *N.J.Super.* at 411, 317 *A.*2d 731. A hallmark of the law of the case doctrine is its discretionary nature, calling upon the deciding judge to balance the value of judicial deference for the rulings of a coordinate judge against those "factors that bear on the pursuit of justice and, particularly, the search for truth." *State v. Reldan, supra,* 100 *N.J.* at 205, 495 *A.*2d 76. Second, we are mindful of the principle that a denial of summary judgment is always interlocutory, and never precludes the entry of judgment for the moving party later in the case, *Johnson v. Cyklop Strapping Corp.,* 220 *N.J.Super.* 250, 257, 531 *A.*2d 1078 (App.Div.1987), *certif. denied,* 110 *N.J.* 196, 540 *A.*2d 189 (1988); *Southport Development Group, Inc. v. Township of Wall,* 295 *N.J.Super.* 421, 429–30, 685 *A.*2d 84 (Law Div.1996), especially by the judge who is presiding over the trial on the merits, *C.P. v. Township of Piscataway Bd. of Education,* 293 *N.J.Super.* 421, 431, 681 *A.*2d 105 (App.Div.1996); *Rzepiennik v. U.S. Home Corp.,* 221 *N.J.Super.* 230, 236, 534 *A.*2d 89 (App. Div.1987); *A & P Sheet Metal Co., Inc. v. Edward Hansen, Inc.,* 140 *N.J.Super.* 566, 571–76, 357 *A.*2d 37 (Law Div.1976). Third, the law of the case doctrine is essentially an adjective concept, and should not be used to justify an incorrect substantive result. *See, e.g., Reldan, supra,* 100 *N.J.* at 204, 495 *A.*2d 76 (citing *State v. Hoffler,* 174 *Conn.* 452, 389 *A.*2d 1257 (1978)) (motion to suppress may be treated by court as law of the case if, in the court's opinion, it was correctly granted); *cf. C.P. v. Township of Piscataway Bd. of Education, supra,* 293 *N.J.Super.* at 431, 681 *A.*2d 105.

At bottom, because we regard the trial judge's ruling to have been correct on the merits, we adopt his reasoning as dispositive. As an appellate court, where the controlling issue has been fully addressed on appeal, we are in no way precluded by the law of the case doctrine from disposing of the matter on a basis that differs from that used by the motion judge in making the initial ruling, or from reaching a contrary result.

■ Finally, we dispose of an issue emphasized by plaintiff at oral argument. It is a similar contention, in the § 1983 context, to that advanced by plaintiff as a State law question under the Tort Claims Act, bearing upon the municipality's liability as an entity, as distinguished from the liability of the individual defendants. To the extent the trial judge, in his ruling and in the reasons stated therefor, did not address questions of entity liability in relation to § 1983, we view such issues to be governed essentially by the same rules of law upon which we have already relied. Not only are the individual defendants not liable to plaintiff because of the way in which principles of qualified immunity apply to insulate them, but there is also no basis upon which the entities that employed those individuals could be liable for the same acts or omissions. No municipal ordinance, policy or custom triggering a violation of plaintiff's rights has been identified, *Monell v. Department of Social Services,* 436 *U.S.* 658, 690–91, 98 *S.Ct.* 2018, 2035–36, 56 *L.Ed.*2d 611, 635 (1978); nor has there been any showing of a deliberate choice to pursue unconstitutional conduct on the part of officials responsible for setting final policy for the municipality. *Pembaur v. City of Cincinnati,* 475 *U.S.* 469, 481–83, 106 *S.Ct.* 1292, 1299–1300, 89 *L.Ed.*2d 452, 464–65 (1986). *See also Bryan County Commissioners v. Brown,* —— *U.S.* ——, ——, 117 *S.Ct.* 1382, 1388, 137 *L.Ed.*2d 626, 636, 638 (1997) ("[I]n enacting § 1983, Congress did not intend to impose liability on a municipality unless *deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights.") (emphasis in original) (citing *Monell, supra,* 436 *U.S.* at 694, 98 *S.Ct.* at 2027, 56 *L.Ed.*2d at 636 to the effect that a municipality may not be held liable under § 1983 solely for employing a tortfeasor).

Affirmed.