**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4056-15T2

L.K. and M.K.,

    Plaintiffs-Appellants,

v.

A.K.,

    Defendant-Respondent.

_____

Argued May 23, 2017 — Decided July 7, 2017

Before Judges Yannotti, Gilson and
Sapp-Peterson.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Passaic
County, Docket No. FD-16-0875-12.

Jay Joseph Friedrich argued the cause for
appellants (Friedrich & Friedrich, PA,
attorneys; Mr. Friedrich, on the briefs).

Francis W. Donahue argued the cause for
respondent (Donahue, Hagan, Klein & Weisberg,
LLC, attorneys; Mr. Donahue, of counsel and
on the brief; Alex M. Miller, on the brief).

PER CURIAM

    Plaintiffs L.K. and M.K. appeal from an order entered by the

Family Part on May 13, 2016, which denied their motion to enforce

prior orders of the court granting plaintiffs visitation pursuant to the Grandparent Visitation Statute (GVS), <u>N.J.S.A.</u> 9:2-7.1.[1] We affirm.

I.

We briefly summarize the relevant facts and procedural history of this matter. In 1997, defendant and Max were married and had two children: Jeffrey, who was born in May 2000, and Jennifer, who was born in July 2002. Max died unexpectedly in July 2011. After Max died, plaintiffs had disagreements with defendant about their contacts with the children, and defendant stopped regular contacts between the children and members of Max's family.

In December 2011, plaintiffs filed a complaint against defendant seeking grandparent visitation pursuant to the GVS. They claimed that defendant was not acting in the best interests of the children, and her actions were causing the children to suffer emotional harm and trauma. They claimed that the denial of visitation could lead the children to believe that plaintiffs had some responsibility for their father's death.

The Family Part judge conducted in camera interviews with the children. Among other things, Jeffrey expressed hostility toward

---

[1] In this opinion, we use initials when referring to the parties and other persons, and fictitious names for the children, their father, and others.

A-4056-15T2

plaintiffs and downplayed their role in his life. Jennifer said plaintiffs were mean and never really liked her or her brother. The judge determined that a psychological evaluation of the children was required, and he appointed Paul Dasher, Ph.D. (Dr. Dasher), to undertake the evaluation.

Dr. Dasher issued a report dated January 13, 2013, in which he concluded that the children had a "significant and positive bond" with plaintiffs and benefited from their relationship with them. Dr. Dasher opined that "continued alienation" of plaintiffs and the children was "emotionally harmful" to the children. He recommended visitation between plaintiffs and the children, as well as with their paternal aunt and her family.

Defendant retained Serge Mosovich, M.D., M.P.H. (Dr. Mosovich) as an expert, and he submitted a report dated April 29, 2013. He disputed many of Dr. Dasher's findings. He noted that both children had informed Dr. Dasher that they did not want to have a relationship with plaintiffs, and they were angry that plaintiffs would sue their mother. He stated that the record did not support Dr. Dasher's conclusion that the children would be harmed if they did not have a bond with plaintiffs.

The judge conducted a hearing in the matter at which Dr. Dasher and Dr. Mosovich testified. On August 22, 2013, the judge filed an opinion concluding that plaintiffs had established

grounds for relief under the GVS. The judge accepted Dr. Dasher's testimony and found that Dr. Mosovich's testimony was not persuasive or helpful.

The judge determined that plaintiffs had shown by "more than the preponderance of the evidence" that Jeffrey and Jennifer will suffer harm if plaintiffs are denied visitation with them. The judge ordered defendant to submit a proposed visitation schedule, and thereafter denied defendant's motion for a stay of his order pending appeal.

On October 1, 2013, the judge entered orders establishing a visitation schedule and appointing a visitation coordinator. On October 4, 2013, the court issued an order which detailed the manner in which the children would be picked-up and dropped off for visits with plaintiffs and appointed clinical psychologist Thomas H. Golden, Ph.D. (Dr. Golden), to serve as a visitation coordinator.

Defendant filed a motion in this court to stay visitation pending appeal. On October 31, 2013, we denied defendant's motion and remanded the motion to the trial court so that the parties could submit additional evidence as to whether visitation should be stayed pending disposition of the appeal.

The parties submitted additional evidence to the trial court regarding the stay, and the court conducted a hearing on the

motion. On December 10, 2013, the judge filed an opinion and order denying the motion for a stay. Defendant then filed a motion in this court for a stay of visitation. We denied the motion.

While the appeal was pending, plaintiffs filed a motion in the trial court pursuant to Rule 1:10-3. They asserted that defendant had willfully violated the court's prior orders granting visitation, and the court should enforce those orders. Defendant opposed the motion. Among other things, defendant stated that the children did not want to visit plaintiffs, and she could not persuade them to do so.

The trial court appointed a mediator to attempt to resolve the dispute over visitation, but the mediator's efforts were not successful. The trial court then conducted an evidentiary hearing on the motion, and on October 10, 2014, filed an opinion finding that defendant had willfully failed to comply with the court's orders.

The judge required defendant to: open Gmail and messaging-service accounts for the children; send two photos of the children to plaintiffs each month; participate in therapy on the issue of grandparent visitation; and meet with Dr. Golden. The judge also issued an order dated November 13, 2014, appointing Jonathan Gordon, Esq. as a therapist for defendant for the term of one year. On January 21, 2015, the court entered a case management

order, which ordered that the children participate in court-supervised Skype-communication sessions in February 2015 and attend visits with plaintiffs at their home in March 2015.

Thereafter, we filed an opinion affirming the trial court's order granting plaintiffs' application for visitation. M.K. v. A.K., No. A-0629-13 (App. Div. Apr. 10, 2015) (slip op. at 23). We concluded that the court's factual findings were supported by sufficient credible evidence, the court had applied the correct legal principles in ordering visitation, and the court did not err by relying upon Dr. Dasher's opinion and testimony. Id. at 15-23. Defendant filed a petition for certification with the Supreme Court. The Court later denied the petition. M.K. v. A.K., 223 N.J. 162 (2015).

On June 2, 2015, the trial court issued an order directing the Division of Child Protection and Permanency (DCPP) to open a Title 30 case for the immediate care and supervision of the children after becoming concerned with defendant's "decision-making." Defendant filed an emergent application with this court thereafter. On June 19, 2015, we reversed the portion of the trial court's June 2, 2015 order that directed DCPP to open a Title 30 investigation, holding that the trial courts do not have the authority to order a state agency to open an investigation. In light of our decision, the trial court issued an order on June 20,

2015, vacating the portion of the June 2, 2015 order regarding the opening of a Title 30 investigation, and the portion of a February 25, 2015 order regarding transportation of the children by DCPP. The trial court also ordered a mental health professional, Dr. Marc Singer, to evaluate defendant.

In August 2015, after defendant objected to the trial court's use of Dr. Singer, the trial court appointed Gerald A. Figurelli, Ph.D. (Dr. Figurelli), to perform a forensic psychological evaluation of defendant. Defendant met with the doctor on three occasions in November and December 2015.

In November 2015, plaintiffs filed another motion pursuant to Rule 1:10-3, seeking an order declaring that defendant had refused to comply with the court's prior orders. Plaintiffs sought additional remedies to enforce those orders, including economic sanctions; counseling for the children or parent; defendant's participation in an approved community-service program; incarceration; issuance of a bench warrant upon further violation of the court's orders; and appointment of a guardian ad litem for the children. Defendant opposed the motion.

It appears that the judge who had been handling the matter was transferred from the Family Part, and the matter was re-assigned to another Family Part judge. In March 2016, Dr. Figurelli provided the court with his psychological evaluation of defendant.

The judge conducted oral argument in the matter on March 29, 2016, and on April 5, 2016, the judge filed an opinion and order denying the motion.

The judge found that it was not in the children's best interest to force them to participate in visitation that they did not want, or to compel them to undergo further psychological testing. The judge also found that appointment of a guardian ad litem or imposing sanctions upon defendant was not in the children's best interests. The judge modified the court's prior orders to cease all court-ordered visitation between plaintiffs and the children "to protect the best interests of the children" and "insulate them from the traumatizing effects of further litigation and testing."

Plaintiffs appeal and argue that: (1) the judge did not have the "right" to impose his opinion and refuse to enforce the prior decisions of the trial court and this court; (2) the judge denied them due process of law; and (3) the judge violated the "law of the case" doctrine.

## II.

We turn first to plaintiffs' argument that the Family Part judge erred by failing to enforce the trial court's previous order granting them visitation with the grandchildren. Plaintiffs argue that the judge violated the "law of the case" doctrine by failing

A-4056-15T2

to adhere to the prior order granting visitation, which was upheld by this court. We disagree.

The law of the case doctrine provides "that a legal decision made in a particular matter 'should be respected by all other lower or equal courts during the pendency of that case.'" Lombardi v. Masso, 207 N.J. 517, 538 (2011) (quoting Lanzet v. Greenberg, 126 N.J. 168, 192 (1991)); State v. Reldan, 100 N.J. 187, 203 (1985). To that end, the doctrine "is a non-binding rule intended to 'prevent relitigation of a previously resolved issue'" in the same case, "by a different and co-equal court." Lombardi, supra, 207 N.J. at 538-39 (quoting In re Estate of Stockdale, 196 N.J. 275, 311 (2008)).

"When applicable, [the law of the case doctrine] prohibits 'a second judge on the same level, in the absence of additional developments or proofs, from differing with an earlier ruling[.]'" Jacoby v. Jacoby, 427 N.J. Super. 109, 117 (App. Div. 2012) (second alteration in original) (quoting Hart v. City of Jersey City, 308 N.J. Super. 487, 497 (App. Div. 1998)). It should be noted, however, that the rule is discretionary, and the doctrine is to "be applied flexibly to serve the interests of justice." Reldan, supra, 100 N.J. at 205.

As we have explained, the Family Part judge entered an order in August 2013, finding that plaintiffs should be granted

visitation pursuant to the GVS. We affirmed that order, concluding that there was sufficient credible evidence in the record to support the order.

Thereafter, the judge found that defendant had willfully violated the orders by taking actions to thwart visitations. The judge entered several orders to enforce the visitation order. Among other remedies, the judge mandated court-supervised electronic communication and in-person visits between plaintiffs and the children. The record shows that the children were opposed to such compelled visitation and traumatized by them.

When the second judge assumed responsibility for the matter in February 2016, he reviewed the entire record in the case. In his opinion of April 5, 2016, the judge recognized that the prior orders in the case were binding upon him, including the order granting visitation which had been affirmed on appeal. The judge determined, however, that he had to consider the specific enforcement motion before him in light of the record.

The judge found that none of the remedies sought would have any more likelihood of success than the remedies previously ordered. The judge noted that imposing monetary sanctions would only serve to deprive the children of funds that defendant could use for their care. The judge stated the children's best interests

would not be served if defendant was arrested or required to participate in an approved community service program.

The judge found that further psychological counseling of the children was not in their best interests. The judge observed that the children's "fragile psyches have already been poked and prodded several times during the course of this litigation." The judge also found that appointment of a guardian ad litem for the children would perpetuate the litigation and require investigation and additional costs.

The judge pointed out that during a February 27, 2015 court-ordered Skype session, Jeffrey began to yell and curse at his grandparents. He refused to stop, forcing the court staff to terminate the session. Thereafter, Jennifer had what appeared to be an anxiety attack due to an anticipated visit with plaintiffs. The court's staff had to intervene when Jennifer appeared to be hyperventilating.

Further attempts to complete court-ordered Skype sessions failed when Jennifer had "an adverse anticipatory reaction" prior to the third session, and an anxiety attack at a sporting event around the time of the fourth session. The judge observed that

> [n]one of the psychologists assigned to review this matter have been able to definitively conclude whether this behavior by [Jeffrey and Jennifer] was caused by their own feelings about their grandparents, or was the result

11

of coaching by their mother. Regardless of the cause of the behavior, it is clear to the [c]ourt that this litigation has traumatized both children and they are being harmed by continued attempts to force visitation with their grandparents.

The judge also noted that the children had expressed to the court and to the professionals involved in the matter that they do not want to have visitation of any sort at this time with their grandparents. The judge wrote, "[s]everal years have passed since the inception of this litigation, but their position has not [wavered]. They are now teenagers with minds of their own, and the [c]ourt should give credence to their wishes."

Dr. Figurelli noted that further testing would be required to determine if defendant was responsible for alienating the grandchildren from their grandparents. The judge determined, however, that additional psychological tests would not be in the children's best interests.

The judge further found that Dr. Dasher had opined previously that continued alienation of the children and their grandparents was "emotionally harmful" to the children "in the long and short term." The judge stated that Dr. Dasher's opinion had to be weighed against "what has transpired since then."

The judge determined that the "most persuasive evidence" of the effect that visitation was having on the children was the

children's reaction to the court-ordered Skype sessions. The judge noted that the judge who previously handled the matter and this court had not been able to evaluate the effect the mandated Skype sessions had upon the children.

The judge determined that further enforcement of the visitation orders in the case would only increase the animosity amongst the parties, who "need time to recover and move forward from the tragic events in their lives." The judge stated that his responsibility was to do what is best for the children. He determined that it is not in their best interests "to continue to subject them to unwanted visitation or forced psychological testing."

The newly-assigned judge did not mistakenly exercise his discretion by considering the latest enforcement motion in light of Dr. Figurelli's more recent psychological report, and the evidence regarding the children's reaction to the court-ordered Skype sessions. The judge noted that the children had grown older. The children were teenagers and had their own views concerning the visits, which the court properly considered. The law of the case doctrine did not preclude the judge from determining that further enforcement of the trial court's previous orders would not be in the children's best interests.

We reject plaintiffs' contention that the judge erred by revisiting an issue that they believe was settled by the prior decisions of the court. Previously, the court had determined that plaintiffs had shown, in light of the record that then existed, that they should be granted visitation pursuant to the GVS. The newly-assigned judge was required to decide the enforcement motion in light of evidence of what had transpired since the court's earlier orders were entered. The judge found that forced visitation was having a harmful effect upon the children.

We must defer to the trial court's findings of fact if supported by sufficient credible evidence in the record. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). We also must "accord deference" to the factual findings of the Family Part because of that court's "special jurisdiction and expertise in family matters." Id. at 413.

We conclude that there is sufficient credible evidence in the record for the judge's finding that further attempts to force the children to participate in court-ordered visits with their grandparents, further litigation, and additional psychological evaluations would not be in the children's best interests.

Next, plaintiffs argue that the judge denied them due process by modifying the prior orders in this case, and ceasing all court-ordered visitation between plaintiffs and their grandchildren. Plaintiffs contend that, by adjourning their motion to enforce the prior orders several times, the judge denied their due process right to enforce the prior orders in the case.

Plaintiffs further argue that the case should not have been transferred to a new judge, and the newly-assigned judge did not fully review the entire record. They contend the evidence does not support the judge's finding that the children would be harmed by visitation or further psychological evaluations. We cannot agree.

The grandparents "bear the burden of establishing by a preponderance of the evidence that visitation is necessary to avoid harm to the child." Moriarty, supra, 177 N.J. at 117. In this case, the trial court initially determined that visitation should be granted because their grandchildren would suffer harm without such visits. The evidence later presented to the trial court showed, however, that enforcement of the visitation order was having a harmful effect upon the children. Thus, visits that were intended to avoid harm were, in fact, causing harm.

Thus, plaintiffs did not have a due process right to enforce the trial court's prior orders. They had a right to have the court

consider their motion to enforce the court's prior orders in light of the new evidence presented to the court. That evidence supports the trial court's finding that compelled visitation and further psychological evaluations would not be in the children's best interests. Therefore, the newly-assigned judge did not mistakenly exercise his discretion by refusing to mandate continued enforcement of the court's prior orders.

We have considered plaintiffs' other arguments and have determined that they are without sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

16

A-4056-15T2