**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.   A-1482-16T3
                         A-1579-16T3

FRANK K. COOPER REAL ESTATE
#1, INC., a Florida corporation, SILM
ENTERPRISES d/b/a CENTURY 21
PROPERTY MART, INC., a Michigan
corporation, CENTRE POINT REAL
ESTATE d/b/a CENTURY 21 CENTRE
POINT, a sole proprietorship, and DAVID
NICHOLS and KIM COMBS, INC. d/b/a
CENTURY 21 SUNLAND REALTY,
an Arizona corporation, on behalf
of themselves and all others similarly
situated, and QUALITY ASSOCIATES
II d/b/a CENTURY 21 PROFESSIONAL
CORPORATION, a New Jersey corporation,

     Plaintiffs,

v.

CENDANT CORPORATION f/k/a
HOSPITALITY FRANCHISE SYSTEMS
and CENTURY 21 REAL ESTATE
CORPORATION,

     Defendants.

_____

IN THE MATTER OF KEEFE BARTELS,
LLC, n/k/a KEEFE LAW FIRM, and

KOPELOWITZ OSTROW PA,

    Appellants,

v.

ZWERLING, SCHACHTER &
ZWERLING, LLP,

    Respondents.

_____

IN THE MATTER OF ZWERLING,
SCHACHTER & ZWERLING, LLP,

    Appellants,

v.

KEEFE BARTELS, LLC, n/k/a KEEFE LAW
FIRM, and KOPELOWITZ OSTROW PA,

    Respondents.

_____

> Argued October 23, 2018 - Decided December 6, 2018
>
> Before Judges Yannotti, Rothstadt, and Gilson.
>
> On appeal from Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0377-02.
>
> Joseph P. LaSala argued the cause for appellants in A-1482-16 and respondents in A-1579-16 (McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys; Joseph P. LaSala, on the briefs).
>
> Stephen R. Knox argued the cause for respondents in A-1482-16 and appellants in A-1579-16 (Bressler,

Amery & Ross, PC, attorneys; Stephen R. Knox and Gerd W. Stabbert, Jr., on the briefs).

PER CURIAM

These two appeals involve a dispute over the apportionment of approximately $11.3 million in attorneys' fees awarded in connection with a class action settlement. Three law firms represented the class of plaintiffs and claim a portion of the fees: Zwerling, Schachter & Zwerling, LLP (ZSZ); Keefe Bartels, LLC, n/k/a Keefe Law Firm (Keefe); and Kopelowitz Ostrow, PA. (KO). ZSZ contends that it is entitled to substantially more than one-third of the fees based on the number of hours it worked and the responsibility it undertook during the class action. Keefe and KO, in contrast, argue that the firms agreed to split equally any attorneys' fees, with each firm receiving one-third of the fee award. To try to resolve the dispute, Keefe and KO made an offer of judgment, but ZSZ did not accept that offer.

Eventually, the firms agreed to arbitrate the fee dispute. The arbitrator found that the firms had agreed to split the fee award equally, with each firm receiving one-third "despite any unequal division of work and responsibility in the underlying class action." Thus, the arbitrator directed that each of the three firms "share the attorneys' fee award in equal thirds[.]" The trial court affirmed the arbitration award. The trial court also denied a motion by Keefe and KO to

3

award them costs and fees incurred after ZSZ did not accept their offer of judgment.

ZSZ appeals from orders entered on June 10, 2016 confirming the arbitration award and denying its motion to vacate the arbitration award. Keefe and KO appeal from a November 2, 2016 order denying their motion for an award of fees and costs incurred after their offer of judgment was rejected. In this consolidated opinion, we affirm all three orders. The arbitrator acted within the scope of his authority and there is no basis to overturn the arbitration award. Moreover, the amount of the arbitration award was not sufficient to trigger the shifting of fees and costs under Rule 4:58, the offer of judgment rule.

I

Counsel began investigating the potential class action in 2000, suit was filed in 2002, and the class action eventually settled over ten years later in 2012. Accordingly, some background concerning how the three firms came to represent the class and how they dealt with each other is relevant to understanding their fee dispute.

In 2000, a Florida law firm, which ultimately turned over its interests to KO, began investigating claims against Century 21 Real Estate Corporation (Century 21) by disgruntled franchisees. The Florida law firm was originally

Atlas Pearlman, PA. Thereafter, Atlas became Adorno & Yoss, PA. That firm then dissolved and the attorneys who were working on the class action joined KO. We refer to these firms collectively as KO.

In 2001, KO entered into an attorney-class representative agreement with two Century 21 franchisees. KO believed that the class action should be pursued as a nationwide class action. At that time, however, KO had a limited number of attorneys and limited experience with class actions. Consequently, KO reached out to ZSZ, which was a firm with substantial class action experience.

KO and ZSZ decided to file the class action in New Jersey. One of the lawyers involved explained that the decision was based on a choice-of-law provision in the franchise agreements. ZSZ and KO then approached McElroy, Deutsch & Mulvaney, LLP (MDM), a New Jersey law firm, to act as additional class counsel.

In January 2002, the three firms entered into an attorneys-class representative agreement with a class representative plaintiff, Frank K. Cooper Real Estate #1, Inc. Relevant to their roles and potential attorneys' fees, the agreement provided:

> I further understand that [KO], [ZSZ] and [MDM] will be co-counsel to me in this matter, and that they shall be apportioning the fees recovered with [KO] receiving 33 1/3 %, [ZSZ] receiving 33 1/3% and [MDM]

5

receiving 33 1/3% of any attorneys' fee earned in this case. I agree to the fee sharing set forth in this agreement. More specifically that each of the law firms named herein shall share the fee which is in accordance with their anticipated division of work and responsibility in this matter.

On January 30, 2002, the class action lawsuit was filed in the Superior Court of New Jersey. Thereafter, the three firms entered into two more attorneys-class representative agreements with additional class plaintiffs. The second and third agreements were signed on January 30, 2004, and April 5, 2004. Both of those agreements contained the same fee-splitting language as in the first agreement. Moreover, all three agreements provided that if any attorney withdrew as counsel, that attorney would be entitled to compensation at his or her standard hourly rate in effect when the agreement was signed, provided there was a recovery against the defendants in the class action.

In 2004, MDM withdrew as one of the class counsel, and the New Jersey firm that ultimately became Keefe substituted in to replace MDM. Before us, the parties agree that KO, Keefe, and ZSZ are the three firms with a right to share in the apportionment of the class attorneys' fees under the attorneys-class representative agreements signed in 2002 and 2004. Keefe also acknowledges that MDM will receive its fees out of Keefe's share of the fees.

The class action was actively litigated for years. Following a series of motions, a class was certified in August 2010. Just before that certification, in late 2009, ZSZ sent an email to KO and Keefe seeking their lodestars. A lodestar is a composite of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Rendine v. Pantzer, 141 N.J. 292, 334-35 (1995) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). Thereafter, in January 2010, ZSZ sent an email stating that KO had not assumed an equal amount of the work and that it was "a good time . . . to determine what a fair allocation of fees would be." In October 2010, ZSZ sought to modify the apportionment of attorneys' fees from the allocation set forth in the attorneys-class representative agreements. Because ZSZ maintained it had done more work on the class action than the other two firms, it proposed allocating the fees based on the hours actually spent on the case. Although the firms thereafter exchanged communications and met to discuss the fee allocation, no new allocation agreement was reached.

As noted earlier, the class action was settled in February 2012. The court approved that settlement in June 2012. In connection with approving the settlement, the court also awarded $11,299,727 in attorneys' fees to class counsel and $2,969,773 in costs incurred by class counsel.

A-1482-16T3

The firms could not agree on how to apportion the fee award. Thus, in 2013, ZSZ filed a motion for summary judgment on the issue of apportionment, and Keefe and KO cross-moved for summary judgment. ZSZ argued that the apportionment should be based on hours spent and responsibility assumed during the class action. KO and Keefe contended that the attorneys-class representative agreements governed and required the firms to share the fee equally, with each firm receiving one-third of the fee award.

After hearing oral argument, the trial court denied both motions for summary judgment in orders entered on March 8, 2013. In its oral decision, the court reasoned that there was some ambiguity in the attorneys-class representative agreements as to whether the firms were agreeing to split the fees on an equal one-third basis, or whether the fees were to be allocated based on the work and responsibilities undertaken in the class action. The trial court, therefore, directed that an evidentiary hearing be held.

Accordingly, in its order denying ZSZ's motion, the trial court directed that

> [t]wo issues are to be resolved in an evidentiary hearing: 1) whether the firms each undertook their respective [one-third] share of "work and responsibility" in the class action litigation and, if not, 2) whether any firm not having done so is entitled to a quantum meruit award and, if so, how much.

The court also "determined that ZSZ, [Keefe, and] KO are parties to the [three] Attorneys-Class Representative Agreements" and "[t]hat issue is resolved [and] it is so ordered." Finally, the court directed the parties to engage in discovery on the issues that would be addressed at the evidentiary hearing.

On June 3, 2013, Keefe and KO served an offer of judgment on ZSZ. The three firms had previously agreed to distribute seventy-five percent of the fee award without prejudice to a reallocation. Thus, each firm had received twenty-five percent of the fee award, and the remaining twenty-five percent had been placed in escrow. The offer of judgment stated that each firm would retain the twenty-five percent of the fee award already distributed to it, Keefe and KO would receive $1,360,000 of the remaining monies held in escrow, and ZSZ would receive $1,580,000 of the monies in escrow. Thus, ZSZ would receive "$600,000 more of the total fee award than [ZSZ] otherwise would have received had each firm received an equal one-third share of the total fee award[.]" ZSZ did not accept that offer.

Thereafter, the three firms engaged in discovery. In July 2014, the firms agreed to submit the fee dispute to arbitration. The written arbitration agreement stated that they "agreed to submit the Fee Dispute" to binding arbitration under the New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32. "Fee Dispute" was

9

not defined, but the arbitration agreement contained no language limiting that term.

The three firms also agreed to "limit their right of appeal and expand the scope of judicial review of any arbitration award[.]" In that regard, the firms agreed that any appeal from the arbitration award would be to the Law Division and to the Appellate Division, but that no party would appeal to the New Jersey Supreme Court. They also agreed that the arbitrator's legal conclusions would be reviewed "de novo," but factual findings made by the arbitrator "shall not [be] disturb[ed]" unless they "are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."

The parties then selected an arbitrator, a former United States District Court Judge. The parties thereafter submitted numerous briefs and substantial volumes of documents and materials to the arbitrator. The arbitrator held a hearing in April 2015, and the parties submitted post-hearing briefs.

On January 12, 2016, the arbitrator issued a written award. The arbitrator found that the three firms had entered into the attorneys-class representative agreements in 2002 and 2004, and did not modify their fee-splitting agreement thereafter. The arbitrator then determined that he was not bound by the trial

court's legal determinations made when the court denied summary judgment in 2013. Thus, the arbitrator concluded that the attorneys-class representative agreements "mandate an equal sharing of the attorneys' fees, despite any unequal division of work and responsibility in the underlying class action."

In reaching that conclusion, the arbitrator looked at the operative language contained in two sentences. The first sentence provided that class counsel "shall be apportioning the fees recovered with [KO] receiving 33 1/3 %, [ZSZ] receiving 33 1/3 %, and [Keefe] receiving 33 1/3 % of any attorneys' fee earned in this case." The arbitrator found that sentence was clear in stating that each firm would receive an equal one-third allocation of fees. The second sentence stated: "More specifically that each of the law firms named herein shall share the fee which is in accordance with their anticipated division of work and responsibility in this matter." The arbitrator reasoned that the "[m]ore specifically" sentence did not provide "explicit guidance as to how the fees should be distributed." Instead, the arbitrator held that the "primary" "33 1/3%" sentence "explains precisely how the fees are to be divided and, thus, 'controls over the more general' clause."

The arbitrator supported that conclusion with factual findings concerning the probative extrinsic evidence. In that regard, the arbitrator found: (1) there

was no evidence that any firm failed to contribute towards earning the fee award, and each of the three firms contributed thousands of hours to the class action; (2) the firms "'made no effort at the beginning of the case (or later) to equalize the billing rates amongst the three firms' or exchange time records"; (3) ZSZ did not raise the issue of an allocation of fees based on time spent on the litigation "until very late in the case, when a recovery or settlement became likely"; and (4) "ZSZ's post-Agreement conduct supports [Keefe's and KO's] assertion that the Agreements entitled each of the parties to a one-third share of the attorneys' fees, even if the parties did not share the work and responsibility in the class action litigation equally."

KO and Keefe moved to confirm the arbitration award, and ZSZ cross-moved to vacate the award. On June 10, 2016, the trial court heard oral argument and entered orders confirming the arbitration award and denying the motion to vacate the award. In its oral decision, the court acknowledged the modified standard of review the firms had agreed to in their arbitration agreement. Applying a de novo review, the court found that the arbitrator acted within the scope of his authority and that his award did not contain any errors of law. In that regard, the trial court found that the arbitrator was not bound by

the court's reasoning in denying summary judgment. The trial court also found that there was no basis to disturb the arbitrator's factual findings.

On June 30, 2016, Keefe and KO filed a motion seeking reimbursement of the attorneys' fees and costs they incurred after ZSZ did not accept their offer of judgment. On November 2, 2016, the court denied that motion.

ZSZ appeals from the June 10, 2016 orders confirming the arbitration award and denying its motion to vacate the award. Keefe and KO appeal from the November 2, 2016 order denying their motion for fees and costs incurred after the offer of judgment was not accepted. We will first address ZSZ's appeal and then analyze the appeal brought by Keefe and KO.

II

On its appeal, ZSZ makes three primary arguments. It contends that the trial court erred in (1) finding that the arbitrator did not exceed the scope of his authority; (2) concluding that the arbitrator correctly found that the attorneys-class representative agreements called for an equal, one-third fee allocation; and (3) confirming an equal one-third allocation without considering the evidence that Keefe and KO did not actually perform one-third of the work and responsibility. We are not persuaded by any of these arguments.

A.    The Scope of the Arbitrator's Authority

Agreements to arbitrate are contracts and, therefore, subject to the laws governing contract interpretation. Roach v. BM Motoring, LLC, 228 N.J. 163, 174 (2017) (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)). In interpreting an arbitration provision, courts look to the provision's plain language. Ibid. (quoting M.J. Paquet, Inc. v. N.J. Dep't of Transp., 171 N.J. 378, 396 (2002)); see also Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 135 (2001) (explaining that "the intent expressed or apparent in the writing . . . controls" the interpretation of an arbitration agreement) (quoting Quigley v. KPMG Peat Marwick, LLP, 330 N.J. Super. 252, 266 (App. Div. 2000)). Thus, "[a] contracting party is bound by the apparent intention he or she outwardly manifests to the other party. It is immaterial that he or she has a different, secret intention from that outwardly manifested." Quigley, 330 N.J. Super. at 266 (quoting Tung v. Briant Park Homes, Inc., 287 N.J. Super. 232, 239 (App. Div. 1996)).

The parties here agreed that their arbitration was governed by the New Jersey Arbitration Act (Act), N.J.S.A. 2A:23B-1 to -32. The Act provides that a "court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." N.J.S.A. 2A:23B-6(b). Accordingly,

A-1482-16T3

determining whether an agreement calls for a particular dispute to be arbitrated is a question for the court, unless the arbitration agreement expressly confers that authority on the arbitrator. Morgan v. Sanford Brown Inst., 225 N.J. 289, 304 (2016). Our standard of review of the scope of the arbitrator's authority is de novo. Id. at 302-03 (explaining that the "standard of review of the validity of an arbitration agreement, like any contract, is de novo" (citing Atalese v. U.S. Legal Servs. Grp., 219 N.J. 430, 446 (2014)).

ZSZ argues that the arbitration award should be vacated because the arbitrator exceeded his authority in two ways. First, ZSZ contends that it agreed to arbitrate only two issues. Specifically, those issues were the questions the trial court identified in its order denying summary judgment; that is, (1) whether each firm performed its one-third share of work and responsibility; and, if not, (2) whether and how the fee award should be apportioned on a quantum meruit basis. Second, ZSZ argues that the arbitrator exceeded his authority because in denying summary judgment, the trial court had made certain legal decisions that constituted law of the case and were binding on the arbitrator.

We disagree with both of those arguments. The express terms used by the parties here did not limit the arbitrator's authority. Instead, the parties agreed to submit to binding arbitration the "Fee Dispute." The arbitration agreement did

15

not define "Fee Dispute," nor did the agreement contain any language limiting that term. The plain interpretation of "Fee Dispute" is that it is a comprehensive term, encompassing the entire dispute over the attorneys' fees.

Here, the parties were sophisticated law firms represented by seasoned and experienced legal counsel. If they had intended to limit the arbitrator's scope of authority, they could have easily done so by adding specific language to the arbitration agreement. They did not. Instead, as written, the agreement granted the arbitrator broad authority over the entire fee dispute.

We reject ZSZ's second argument concerning the law of the case for two reasons. First, as just noted, the parties granted the arbitrator broad authority to address the fee dispute without any limitation concerning the prior decision by the trial court.

Second, the law of the case doctrine does not apply here. The law of the case doctrine "is a non-binding rule intended to 'prevent relitigation of a previously resolved issue.'" Lombardi v. Masso, 207 N.J. 517, 538 (2011) (quoting In re Estate of Stockdale, 196 N.J. 275, 311 (2008)). The doctrine reasons that "a legal decision made in a particular matter 'should be respected by all other lower or equal courts during the pendency of that case.'" Ibid. (quoting Lanzet v. Greenberg, 126 N.J. 168, 192 (1991)). The law of the case

doctrine, however, is discretionary. Id. at 538-39 (quoting Hart v. City of Jersey City, 308 N.J. Super. 487, 498 (App. Div. 1998)).

Moreover, "an order denying summary judgment is not subject to the law of the case doctrine because it decides nothing and merely reserves issues for future disposition." Gonzalez v. Ideal Tile Importing Co., 371 N.J. Super. 349, 356 (App. Div. 2004), aff'd, 184 N.J. 415 (2005). Because the denial of summary judgment "preserves rather than resolves issues[,] . . . later reconsideration of matters implicated in the motion, including the reasons in support of the denial, are not precluded." Blunt v. Klapproth, 309 N.J. Super. 493, 504 (App. Div. 1998) (citing A&P Sheet Metal Co. v. Edward Hansen, Inc., 140 N.J. Super. 566, 573-74 (Law Div. 1976)). Indeed, we have cautioned that courts "should not" treat an earlier denial of summary judgment "as establishing the law of the case." Schuhalter v. Salerno, 279 N.J. Super. 504, 508 n.1 (App. Div. 1995).

Here, we discern no reason to treat the trial court's reasoning in denying summary judgment as law of the case. As the arbitrator pointed out, the issue first came before the trial court on a limited record. The record presented in the arbitration was far more expansive. Furthermore, the trial court's reasoning on the motions for summary judgment was not a final decision. Indeed, the same

17

judge who denied summary judgment affirmed the arbitration award and expressly found that his prior reasoning was not law of the case.

ZSZ contends that the court's "re-visitation" of its prior ruling was unfair because it did not have notice of that decision. The record does not support ZSZ's contention. Both before the arbitrator, and on the motions to confirm and vacate the arbitration award, all parties extensively briefed and addressed whether the language in the attorneys-class representative agreements called for an equal one-third fee allocation and whether that issue had already been decided when the trial court denied summary judgment.

In summary, we hold that the arbitration agreement gave the arbitrator authority to decide all issues related to the fee dispute. Accordingly, the arbitrator did not exceed the scope of his authority.

B.    The Arbitration Award

Next, ZSZ contends that the trial court erred in confirming the arbitrator's award. The arbitrator concluded that the attorneys-class representative agreements "require[d] the parties to share the attorneys' fee award in equal thirds, even if the parties did not share the work and responsibility in the underlying class action equally."

The arbitrator reached that decision by looking at the two operative sentences in the attorneys-class representative agreements. Those two sentences provided:

> I further understand that [KO], [ZSZ] and [Keefe] will be co-counsel to me in this matter, and that they shall be apportioning the fees recovered with [KO] receiving 33 1/3 %, [ZSZ] receiving 33 1/3 %, and [Keefe] receiving 33 1/3 % of any attorneys' fee earned in this case. . . . More specifically that each of the law firms named herein shall share the fee which is in accordance with their anticipated division of work and responsibility in this matter.

The arbitrator concluded that the first sentence was clear. He then determined that the second sentence did "not render the contract susceptible to two or more reasonable interpretations." Instead, the arbitrator found the second sentence demonstrated "that the parties anticipated a certain division of work and responsibility in the underlying . . . matter and agreed to split the fees based on that anticipation, and not based on the <u>actual</u> work and responsibility undertaken by each party."

The arbitrator went on to look at the extrinsic evidence and found that that second sentence did not support ZSZ's position. In that regard, the arbitrator made two factual findings. First, the arbitrator determined that ZSZ did not attempt to exchange lodestars with the other firms or equalize billing rates until

19

seven years into the litigation. Second, the arbitrator determined that ZSZ neither disputed the allocation of work nor sought to modify the attorneys' fee provision of the attorneys-class representative agreements until 2010, when a settlement was likely.

In reviewing the arbitrator's award here, we use two standards of review. In their arbitration agreement, the parties agreed to expand the scope of judicial review. They agreed that both the Law Division and this court would use a de novo standard for legal conclusions and a much more deferential standard for factual findings. The Act provides that parties to an arbitration agreement can expand the scope of judicial review of an arbitration award. N.J.S.A. 2A:23B-4(c) ("[N]othing in this act shall preclude the parties from expanding the scope of judicial review of an award by expressly providing for such expansion in a record."); see also Curran v. Curran, 453 N.J. Super. 315, 322 (App. Div. 2018) (quoting Van Duren v. Rzasa-Ormes, 394 N.J. Super. 254, 265 (App. Div. 2007)).

We agree with the arbitrator that the first sentence of the attorneys-class representative agreements is clear in providing that each of the three firms was to receive one-third of a fee award. We also agree with the arbitrator that the key phrase in the second sentence is "anticipated division of work and

20

responsibility."  Finally, we agree with the arbitrator's reasoning that the second sentence did not undercut or modify the clearer first sentence.

As to the factual findings of the arbitrator, we note that he found no evidence demonstrating that any of the firms had "failed to contribute at all toward earning the fee award."  Instead, the arbitrator found that the evidence showed "each party contributed thousands of hours to the class litigation." Those factual findings are supported by the competent credible evidence presented to the arbitrator, and we discern no basis to disagree with those factual findings under the standard of review called for in the parties' arbitration agreement.  Accordingly, there was no evidence supporting a departure from the plain language of the parties' agreement.

In short, the plain language of the attorneys-class representative agreements and the extrinsic evidence supports an equal apportionment of the fee award.  Consequently, the trial court did not err by confirming the arbitrator's award and denying ZSZ's motion to vacate the award.

C.    Quantum Meruit

Finally, ZSZ argues that because Keefe and KO did not each fulfill their share of the work and responsibility, the arbitrator and trial court erred by failing to apportion the attorneys' fees award on a quantum meruit basis.  We disagree.

Quantum meruit means, literally, "as much as is deserved[.]" <u>Kas Oriental Rugs, Inc. v. Ellman,</u> 394 N.J. Super. 278, 286 (App. Div. 2007). Quantum meruit applies when "one party has conferred a benefit on another and the circumstances are such that to deny recovery would be unjust[.]" <u>Ibid.</u> (quoting <u>Weichert Co. Realtors v. Ryan</u>, 128 N.J. 427, 437 (1992)). "[T]he basis for the application of quantum meruit is 'wholly unlike an express or implied-in-fact contract in that it is "imposed by the law for the purpose of bringing about justice without reference to the intention of the parties."'" <u>Ibid.</u> (quoting <u>St. Barnabas Med. Ctr. v. Cty. of Essex</u>, 111 N.J. 67, 79 (1988)). Consequently, "[i]t has long been recognized that the existence of an express contract excludes the awarding of relief regarding the same subject matter based on quantum meruit." <u>Ibid.</u>

Here, as we have already determined, the attorneys-class representative agreements contained an express provision governing apportionment of the attorneys' fee award. Therefore, quantum meruit does not apply. Thus, the arbitrator correctly determined that he did not need to conduct a quantum meruit analysis, and the trial court correctly confirmed the arbitrator's award.

## III

On their appeal, KO and Keefe argue that the trial court erred in denying their motion for attorneys' fees and costs incurred after ZSZ did not accept their offer of judgment. We disagree.

Rule 4:58 governs offers of judgment and "permits a party to offer to take a money judgment or to allow judgment to be taken against it for a sum certain." Best v. C&M Door Controls, Inc., 200 N.J. 348, 356 (2009) (citing R. 4:58-3). Thus, Rule 4:58-1(a) provides that in a non-matrimonial matter, seeking exclusively monetary relief, a party may serve an offer of judgment on an opposing party and file it with the court so long as the offer is made more than twenty days before trial. If the opposing party does not accept the offer within ninety days, or ten days before trial, whichever occurs first, the offer is deemed "withdrawn." R. 4:58-1(b).

Rule 4:58-3 then provides that if a party makes an offer of judgment, which the opposing party does not accept, and the opposing party thereafter recovers eighty percent or less of the offered amount, the offering party is entitled to "allowances." R. 4:58-3(a) to (b). The "allowances" include reasonable litigation expenses and attorney's fees incurred after the rejection of

23

the offer.  <u>R.</u> 4:58-2(a); <u>see also</u> <u>R.</u> 4:58-3(a) (directing that allowances under this rule be defined as prescribed in <u>R.</u> 4:58-2).

The offer of judgment rule is "intended as a procedural mechanism to facilitate the settlement of cases." <u>Wiese v. Dedhia</u>, 188 N.J. 587, 593 (2006). It was "designed particularly as a mechanism to encourage, promote, and stimulate early out-of-court settlement of . . . claims that in justice and reason ought to be settled without trial." <u>Ibid.</u> (omission in original) (quoting <u>Gonzalez v. Safe & Sound Sec. Corp.</u>, 185 N.J. 100, 125 (2005)).  "That goal is achieved through the imposition of financial consequences (the award of fees and costs) where a settlement offer turns out to be more favorable than the ultimate judgment." <u>Best</u>, 200 N.J. at 356 (citing <u>Firefreeze Worldwide Inc. v. Brennan & Assocs.</u>, 347 N.J. Super. 435, 441 (App. Div. 2002)).

Here, Keefe and KO made their offer of judgment in 2013.  Earlier, in April 2012, the three firms entered into a side agreement under which each firm received twenty-five percent of the total fee award subject to repayment depending on the outcome of their fee dispute.  The remaining twenty-five percent was placed in escrow until the matter was resolved.  Each firm also received seventy-five percent of their share of costs and expenses included in the award, except no firm could withdraw more than $525,000 of unreimbursed

costs and expenses. The remaining costs and expense funds were also placed in escrow. Focusing just on the attorneys' fees, each firm's twenty-five percent was approximately $2,820,000.

Keefe and KO offered to take judgment against them

> in the amount of $1,360,000, which amount represents [Keefe's and KO's] two-thirds interest in the remaining attorneys' fees held in escrow pursuant to that certain Side Agreement dated April 2012 **minus** the sum of **$600,000.00**, without prejudice. For the sake of clarity, this Offer of Judgment provides that: (i) [Keefe and KO] and [ZSZ] retain all attorneys' fees already distributed pursuant to the settlement, and (ii) ZSZ will receive **$600,000** more of the total fee award than it otherwise would have received had each firm received an equal one-third share of the total fee award[.]

In other words, the offer proposed that each firm would retain the twenty-five percent of the fees it had already received (that is, approximately $2,820,000). Of the remaining escrow, ZSZ would receive its one-third share plus an additional $600,000, and KO and Keefe would split the remainder of what was held in escrow.

ZSZ did not accept the offer of judgment. Under the arbitration award, each firm received approximately $3,760,000 in fees.

Keefe and KO contend that their offer of judgment was focused only on the twenty-five percent of the remaining undistributed fees. According to Keefe

25                                                      A-1482-16T3

and KO, ZSZ would have received $1,580,000 from the monies remaining in escrow if it accepted the offer of judgment. They then point out that ZSZ was awarded $980,000, and thus, recovered only sixty-two percent of the offer. In their calculations, Keefe and KO used the figure $2,940,000 as the amount in escrow. Keefe and KO do not clarify the difference between that figure and $2,820,000, which is twenty-five percent of the total fee award. In its response, however, ZSZ points out that the $2,940,000 amount includes fees and costs. For the sake of consistency, we use Keefe and KO's figure of $2,940,000.

The plain language of the offer of judgment, however, does not support Keefe and KO's interpretation. By its express terms, the offer provided that each firm would "retain all attorneys' fees already distributed," which amounted to $2,820,000 for each firm. The apportionment of the monies remaining in escrow was in addition to that $2,820,000. Consequently, under the offer of judgment, ZSZ would have received $4,400,000 ($2,820,000 plus $1,580,000). Keefe and KO would have each recovered $3,500,000 ($2,820,000 plus $680,000). Under the confirmed arbitration award, each firm received approximately $3,760,000. Thus, ZSZ received more than eighty percent of the offer of judgment ($3,760,000 divided by $4,400,000 equals 85.5%). Keefe and KO, therefore, were not entitled to costs and attorneys' fees under Rule 4:58.

A-1482-16T3

The orders being challenged in both appeals are affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1482-16T3